# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Scott B. Burgess,**
**Petitioner Below, Petitioner**

**FILED**

November 23, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0750** (Fayette County 12-C-280)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Scott B. Burgess, by counsel Christopher T. Pritt, appeals the Circuit Court of Fayette County's July 02, 2014, order denying his petition for writ of habeas corpus. Respondent David Ballard, Warden, by counsel David A. Stackpole, filed a response. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in denying habeas relief where his trial counsel was constitutionally ineffective in that he failed to pursue a reasonable investigation prior to trial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2010, petitioner was indicted on one count of first-degree murder and one count of first-degree arson for setting his mobile home on fire while his ex-wife and another man were inside. The man subsequently died from smoke inhalation. The trial was initially scheduled for March 9, 2010. In March of 2010, petitioner's first appointed counsel moved the circuit court for a continuance and the circuit court held a hearing regarding the continuance. The trial was then rescheduled to begin on May 26, 2010. However, petitioner's trial did not begin on that date. Instead, between May of 2010 and April of 2011, the circuit court appointed four different attorneys to represent petitioner at trial. Petitioner filed motions to remove the first three of his counsel and to appoint substitute counsel based on petitioner's claims of ineffective assistance.[1] J.B. Rees was appointed as fourth counsel and remained as such through the trial.

In April of 2011, petitioner's case came on for trial. At trial, the State presented evidence that petitioner was angry that his ex-wife was leaving the mobile home and that he threatened to burn her belongings. The State also presented evidence that petitioner made incriminating

---

[1]Petitioner's trial was continued with each new appointed counsel.

1

statements to a neighbor and a sheriff's deputy about burning down the mobile home. Ultimately, the jury found petitioner guilty of first-degree murder during the commission of first-degree arson. In June of 2011, the circuit court sentenced petitioner to life, with a recommendation of mercy.

In August of 2012, petitioner filed a pro se petition for writ of habeas corpus, and the circuit court appointed habeas counsel. In December of 2013, petitioner, through counsel, filed an amended petition for writ of habeas corpus and a *Losh* list in which he raised fourteen grounds: (1) denial of the right to a speedy trial; (2) ineffective assistance of counsel; (3) irregularities in arrest; (4) excessiveness or denial of bail; (5) refusal to subpoena witnesses; (6) lack of a full public hearing; (7) constitutional errors is evidentiary rulings; (8) sufficiency of evidence; (9) defendant's absence from part of the proceedings; (10) improper communications between prosecutor or witness and jury; (11) cumulative effect of numerous errors; (12) newly discovered evidence; (13) transcript incomplete; and (14) incompetent and intoxicated witnesses testifying with knowledge of prosecution.

In February of 2013, petitioner filed a motion to continue the omnibus evidentiary hearing on his amended petition scheduled for February 10, 2013. The circuit court denied petitioner's motion and proceeded with the omnibus evidentiary hearing. At the hearing, petitioner testified that he met with trial counsel on only three occasions prior to trial and that he asked each of his appointed counsel to obtain an arson expert, but that none of them did so. Petitioner testified that an arson expert could have bolstered the truth of his contentions about the fire. Petitioner's counsel, Mr. Rees, testified that neither he nor previous appointed counsel believed that an arson expert was necessary, especially after reviewing the State's investigation documents. Additionally, Mr. Rees testified that he cross-examined the State's arson expert at trial regarding the fire. In fact, Mr. Rees testified that he did not recall petitioner requesting an arson expert. Mr. Rees testified that he spent forty-nine-and-a-half hours in preparation for petitioner's trial and an additional ten hours meeting with petitioner. At the close of the hearing, petitioner motioned the circuit court to conduct a second omnibus evidentiary hearing in order to take the sworn testimony of Nola Duncan regarding various witnesses at petitioner's trial.

In March of 2014, the circuit court conducted a second evidentiary hearing. Ms. Duncan testified that she observed two witnesses at the trial drinking beer outside the courthouse while the circuit court was in recess. Ms. Duncan testified that she did not report her observations to the State or the circuit court. Petitioner testified he had no information about this allegation during the trial and that he did not notice that the witnesses were intoxicated. At the close of this hearing, the circuit court asked the parties to submit proposed findings of facts and conclusions of law. Based on the evidence presented, the circuit court found that petitioner did not present any substantive evidence or testimony to support the allegations in his petition. Therefore, the circuit court denied habeas relief by order entered on July 2, 2014. It is from this order that petitioner now appeals.

On appeal, petitioner alleges that the circuit court erred in denying habeas relief. Petitioner's allegations are based on his contentions that his various appointed attorneys would not comply with his directions in regard to the trial of his case. The record is clear that these

same arguments were adjudicated below. This Court reviews a circuit court order denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

Upon our review and consideration of the circuit court's final order, the parties' arguments, and the record submitted on appeal, we find no error or abuse of discretion by the circuit court. Our review of the record supports the circuit court's decision to deny petitioner's petition for writ of habeas corpus based on petitioner's failure to provide any examples, analysis, explanation, or proof of how any of his alleged errors prejudiced petitioner's trial or impacted his constitutional rights. Having reviewed the circuit court's order denying habeas relief, entered on July 2, 2014, we hereby adopt and incorporate that order's well-reasoned findings of fact and conclusions of law as to this assignment of error. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED: November 23, 2015**

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

# IN THE CIRCUIT COURT OF FAYETTE COUNTY, WEST VIRGINIA

**SCOTT BOYD BURGESS,**

Petitioner,

v.

Case No. 12-C-280
Paul M. Blake, Jr., Judge

**DAVID BALLARD, Warden,**
**Mount Olive Correctional Complex,**

Respondent.

---

## ORDER
## DENYING AND DISMISSING PETITION

---

This matter is before the Court on a *Petition for Writ of Habeas Corpus Ad Subjiciendum* originally filed by *Petitioner*, Scott Burgess, *pro se,* on August 23, 2012. On December 24, 2013, the Petitioner, by and through counsel, Christopher T. Pritt, Esq., filed *Petitioner's Verified Amended Habeas Petition.* This Court conducted an omnibus evidentiary hearing on February 10, 2014. The Court conducted a second evidentiary hearing on March 24, 2014. Following the latter evidentiary hearing, both parties submitted proposed findings of fact and conclusions of law to the Court for its review.

The Court has carefully reviewed the relevant portions of the record, the filings in this matter, and the relevant legal authority and has carefully considered the parties' arguments and the evidence presented at the evidentiary habeas corpus hearings. Based upon the following findings of fact and conclusions of law, the Court is of the opinion that the *Petition for Writ of Habeas Corpus Ad Subjiciendum* should be, and hereby is, **DENIED** and **DISMISSED**, with prejudice, and enters this comprehensive *Order Denying And Dismissing Petition* pursuant to

Section 53-4A-7(c) of the *West Virginia Code* and Rule 9(c) of the *West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings.*

## STATEMENT OF THE CASE

On July 19, 2009, a fire was reported at the Petitioner's mobile home in Powellton, Fayette County, West Virginia. The Petitioner resided at the mobile home with three other adults and eight children. Volunteer firefighters responded shortly after the blaze was reported. After the fire was extinguished and the fire department had left the scene, the body of Kenneth Pritt was discovered in a back bedroom. The medical examiner determined that Mr. Pritt died of smoke inhalation.

At the time of the reported fire, Deputy Morris was off duty attending a family barbecue. When the fire department was called to respond to the fire, Deputy Morris's family members, who were volunteer firefighters for the responding fire department, invited Deputy Morris to ride along. While en route to the fire in Powellton, firefighters and Deputy Morris observed the Petitioner walking away from the fire along the roadway. Another witness, Joseph Burrow, testified that he observed the fire in the very early stages and that he observed the Petitioner in close proximity to the fire, walking away from the mobile home and lighting a cigarette. There was conflicting testimony among the witnesses as to exactly how far from the fire the Petitioner was when he was first observed. There was also conflicting testimony regarding the exact time the fire was first discovered and when the fire department responded.

Deputy Morris was acquainted with the Petitioner, having arrested him in the past, so as the firefighters worked to extinguish the blaze, Deputy Morris caught a ride and went back to tell the Petitioner his mobile home was on fire. Deputy Morris was in shorts and a t-shirt, without his

badge or gun, when he located and spoke with the Petitioner. Deputy Morris informed the Petitioner that his mobile home was on fire and asked the Petitioner what was going on. Deputy Morris testified that the Petitioner told him "arson" and further advised Deputy Morris that it was his f*****g home and he could burn the m****r-f****r down if he wanted to.

At trial there was also testimony that Petitioner's ex-wife, who was at that time living with the Petitioner and attempting reconciliation, had informed him the night prior to the fire that she was leaving him and the Petitioner had subsequently threatened to burn her possessions. There was also considerable testimony that on the day of the fire, the Petitioner had learned that his home had been purchased at a tax sale and he had met with the new owner. Testimony was presented that the Petitioner was "angry" over this situation and had told a neighbor that if he couldn't have his home, no one could. A resident of Petitioner's mobile home further testified that the Petitioner had a horrible temper and appeared agitated preceding the fire.

## PROCEDURAL HISTORY AND GENERAL FINDINGS OF FACT

1. On August 29, 2009, the Petitioner, Boyd Scott Burgess, was arrested and charged with Murder and First Degree Arson. The Petitioner was initially held without bond due to the possible penalty being life imprisonment.

2. On September 2, 2009, the Circuit Court of Fayette County (referred to hereinafter as the or this "Court") entered an *Order Appointing Counsel Following Eligibility Determination By Public Defender*. On this same date, Petitioner, by and through counsel, Assistant Public Defender, James Adkins, Esq. (referred to hereinafter as "*Initial Counsel*"), waived the time period for a preliminary hearing.

3. On October 26, 2009, a preliminary hearing was held in the Magistrate Court of Fayette County. Magistrate M. D. Parsons found probable cause to bind the matter over for presentment to a Fayette County Grand Jury.

4. On January 12, 2010, a Fayette County Grand Jury returned a two (2) count indictment, in case number 10-F-10, charging the Petitioner with Felony Murder and First Degree Arson.

5. On January 22, 2010, the Petitioner was arraigned in the Fayette County Circuit Court before the Honorable Judge John W. Hatcher, Jr., and by and through *Initial Counsel*, entered a plea of not guilty to both counts of the indictment. The Court was informed that bond was not an issue at this time, Petitioner's trial was scheduled to be held on March 9, 2010, and the Petitioner was remanded back into the custody of the Fayette County Sheriff's Department.

6. On February 16, 2010, Petitioner, by and through *Initial Counsel*, filed a *Motion To Supress [sic] Evidence* and two other *Motion[s] In Limine*. The *Motion To Supress [sic] Evidence* sought to suppress any statements made in the presence of Deputies Shannon Morris and/or Deputy Kevin Willis on July 19, 2009.

7. On March 5, 2010, the Petitioner, by and through *Initial Counsel*, moved the Court to continue the trial scheduled for March 9, 2010. As the basis for said motion, the Petitioner averred that additional time was necessary to investigate allegations set forth in the State's Notice Of Intent To Use 404(b) Evidence. On this same date, the Court granted Petitioner's motion and entered an *Agreed Continuance Order* continuing the trial.

-4-

8. On March 9, 2010, the Court conducted a motions hearing in the matter. The Petitioner brought on before the Court his *Motion[s] in Limine* and *Motion To Supress [sic] Evidence*. As a result of said hearing, the parties submitted, and the Court subsequently entered, a *Motions Hearing Order* on March 15, 2010, wherein the Court granted in part, and denied in part, Petitioner's motions and scheduled the matter for trial to begin on May 26, 2010.

9. On May 19, 2010, the Petitioner, by and through *Initial Counsel*, filed a *Motion To Remove Counsel And Appoint Substitute Counsel*. The Court conducted a hearing on Petitioner's motion on May 21, 2010, whereat the Petitioner, *Initial Counsel*, and State's counsel were in attendance. After hearing the parties' proffers onto the record, the Court granted Petitioner's motion and subsequently entered an *Order Relieving Counsel And Continuing Trial* wherein the Court found the attorney-client relationship between counsel and Petitioner to be irretrievably broken, relieved *Initial Counsel* from further representation of the defendant, and continued generally the trial scheduled for May 26, 2010.

10. On May 24, 2010, the Court entered an *Order* appointing Jack Thompson, Esq., to represent the Petitioner.

11. On May 27, 2010, the Court entered an *Order* relieving Jack Thompson from further representation of the Petitioner and appointed Anthony N. Ciliberti, Jr., Esq., as counsel for the Petitioner (referred to hereinafter as "*Third Appointed Counsel*").

12. On September 1, 2010, the Petitioner, *pro se*, filed a handwritten *Motion To Dismiss Counsel*, wherein Petitioner alleged, verbatim, the following:

a. For ineffective assistance of counsel, [*sic*] will not file motions on my behalth [*sic*], for not reciving [*sic*] speedy trail [*sic*][;]

b. "[T]ranscripts of grand jurie [*sic*], [t]estimony's of witness'es [*sic*] and who will testify in state's case[][;]

c. [T]ranscripts of motion's [*sic*] hearing[;]

d. For copy's [*sic*] of all motion's [*sic*] filed in this case. " [*sic*] [I]ndictment no[.] 10-F-10[] [;]

e. Motion to surpess [*sic*] officer Morris's statement.

"Mr. Ciliberti has not filed these motion's [sic] as requested by me, nor has he taken the time to go over my case with me. He was appointed to me May 27, 2010, and as of now, still has not been to see me about my case."

13. On September 8, 2010, the Court entered an *Order* wherein the Court found the Petitioner's *Motion To Dismiss Counsel* to be "frivolous and without merit" and denied the motion.

14. On September 13, 2010, the Court conducted a hearing in relation to the continuance of Petitioner's case from the May 2010, term of Court to the September 2010, term of Court. Petitioner, *Third Appointed Counsel*, and State's counsel were in attendance at the hearing. *Third Appointed Counsel* proceeded to "advise[] the Court that an *Agreed Continuance Order*, continuing this matter from the May, 2010, criminal term of Court to the September, 2010, criminal term of Court had been requested; [H]owever, the defendant would not agree to said continuance." The Court then proceeded to hear the arguments of counsel.

-6-

15. On September 22, 2010, the Court entered an *Order* wherein the Petitioner's jury trial was scheduled to begin on October 18, 2010.

16. On September 29, 2010, the Court subsequently entered a *Continuance Order, Nunc Pro Tunc*, in relation to the September 13, 2010 hearing. The *Continuance Order* reflects that after hearing the arguments of counsel and after reviewing the Court's file, the Court found the following:

    a. That the new criminal term of court begins tomorrow and this matter cannot be tried during the May term[;]

    b. That there was a breakdown in attorney/client relationship, requiring the Court to grant the defendant's prior motion relieving Mr. Adkins of further representation of the defendant[;]

    c. That the next attorney appointed to represent the defendant had a conflict and a third attorney was appointed[;]

    d. That, because this is a complex case and new trial counsel needed time to prepare, to have forced new counsel to trial within two (2) to three (3) weeks after his appointment would have denied the defendant his constitutional and trial rights.

    Based upon these findings, the Court ordered that the matter be continued to the September 2010, criminal term of Court.

17. On October 12, 2010, the Petitioner, by and through *Third Appointed Counsel*, filed a *Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof* and also filed a *Motion For Continuance* alleging as grounds thereof, that "[c]ounsel for the defendant needs additional time to prepare."

18. On October 13, 2010, the Court conducted a hearing on Petitioner's *Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof* and *Motion For Continuance*.

19. On November 29, 2010, the Court entered an *Order Granting Defendant's Motion For Continuance And Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof, Nunc Pro Tunc*, in relation to the October 13, 2010, hearing, wherein, in pertinent part, the trial was continued to January 25, 2011.

20. By letter dated December 4, 2010, the Petitioner moved to disqualify the Honorable Judge John W. Hatcher, Jr., from his case. As the basis for said motion the Petitioner alleged that the judge should be disqualified from further rulings in Petitioner's case due to the potential for bias and prejudice.

21. By *Order* entered December 10, 2010, the Honorable Judge John W. Hatcher, Jr., voluntarily recused himself from presiding over Petitioner's case. The *Order* further reflected that, due to the Court recusing itself, it may be necessary to reschedule the "[Petitioner's] jury trial from January 25, 2011, to a date suitable to Judge Blake's docket."

22. On January 6, 2011, the Petitioner filed, *pro se*, a handwritten *"Motion to surpress [sic] Action taken [sic] statement of Corporal S. R. Morris on July 19, 2009"* and *Motion to remove counsel, and appoint substitute counsel*. As grounds for Petitioner's *Motion to remove counsel, and appoint substitute counsel*, the Petitioner alleged, verbatim, as follows:

    1) Conflict of interest,

    2) [N]ot doing as asked.

-8-

A. Mr[.] Ciliberti, Jr.[,] my appoint [*sic*] counsel is also the counsel of Jack Micah Feltner[,] a former Fayette County deputy that is involved in my case, Indictment No. 10-F-10[.] Attorney-Client trust is irretrievable [*sic*] broken.

B. Mr[.] Ciliberti, Jr. filed a motion to continue my case, Indictment No. 10-F-10 after he was informed by Mr. Scott B. Burgess that he did not want any continuance. Mr[.] Ciliberti, Jr. has had more than enough time to be prepared for this case, as he was appoint [*sic*] May 27, 2010. <u>I did not request this continuance</u> and was not told of it until [*sic*] after the motion was filed.

23. On January 10, 2011, the Court, the Honorable Paul M. Blake, Jr., presiding, entered an *Agreed Continuance Order* continuing the unresolved matter from the September 2010, criminal term of Court, to the January 2011, criminal term of Court and scheduling a status conference to be held in the matter on January 19, 2011.

24. On January 19, 2011, the Court heard the argument of State's counsel and Petitioner's counsel, and the statements of the Petitioner, regarding the allegations contained in the Petitioner's January 6, 2011, *Motion to remove counsel, and appoint substitute counsel.* The Court initially denied Petitioner's motion at the hearing, finding that the Petitioner had failed to show that a valid conflict of interest existed. The Court scheduled the matter for a trial to begin on April 26, 2011. The findings and actions of the Court are reflected in the *Status Conference Order* entered *nunc pro tunc* to the 19th day of January 2011, on April 26, 2011.

25. Upon further reflection and review of the file, out of an abundance of caution and in an effort to avoid such attorney disqualification becoming an issue in the appellate process,

the Court entered an *Order* on January 21, 2011, wherein the Court granted Petitioner's *pro se* motion and thereby relieved Anthony Ciliberti, Jr. as counsel for the Petitioner and appointed J.B. Rees, Esq., (referred to hereinafter as "*Trial Counsel*") to represent the Petitioner in the matter.

26. On April 26, 2011, Petitioner's case came on for a jury trial. On April 27, 2011, a Fayette County petit jury found the Petitioner guilty of murder in the first degree, a felony, as a result of the death of Kenneth E. Pritt occurring during the commission of the felony crime of arson in the first degree, with a recommendation of mercy.

27. On June 13, 2011, a sentencing hearing was conducted by the Court. At said hearing, and as reflected in the *Sentencing And Commitment Order* entered June 21, 2011, the Court sentenced the Petitioner to the West Virginia Penitentiary for life, with a recommendation of mercy and relieved *Trial Counsel* from further representation of the Petitioner. On this same date, the Petitioner filed, *pro se*, a handwritten notice of appeal and a request for the appointment of appellate counsel.

28. On July 1, 2011, the Court entered an *Order* appointing Attorney Richard H. Lorenson, Esq., Public Defender Services, Appellate Division, as appellate counsel of record for the Petitioner (referred to hereinafter as "*Appellate Counsel*").

29. On July 25, 2011, Petitioner, by and through *Appellate Counsel*, filed a *Notice Of Appeal* with the Supreme Court of Appeals of West Virginia (referred to hereinafter as the "Supreme Court of Appeals"), wherein Petitioner alleged the following assignments of error:

> 1) The lower court committed error by admitting Appellant's inculpatory statements to Corporal S.R. Morris because under the totality of

-10-

circumstances, Appellant was not free to leave and was not advised of his Miranda warnings;

2) The lower court committed error by denying Appellant's Motion in Limine concerning the characterization of the fire origin as "arson;" and

3) Appellant contends there was insufficient evidence to convict him and that the lower court committed error in not entering an acquittal on his behalf.

In a *Memorandum Decision* issued on May 29, 2012, in No. 11-1094, the Supreme Court of Appeals affirmed the decision of the Circuit Court of Fayette County.

30. On August 23, 2012, in civil action No. 12-C-280, the Petitioner, *pro se*, filed a *Petition Under W.Va. Code § 53-4A-1 For Writ Of Habeas Corpus*, a *Post-Conviction Habeas Corpus Form Application To Proceed In Forma Pauperis And Affidavit* (referred to hereinafter as the "*Pro se Petition*"), and a *Petition For Court Appointed Attorney* in the Fayette County Circuit Court.

31. On October 5, 2012, the Court entered an *Order Appointing Counsel* wherein the Court appointed Thomas Fast, Esq. as habeas corpus counsel (referred to hereinafter as "*First Habeas Counsel*") for the Petitioner.

32. On March 12, 2013, Petitioner by and through *First Habeas Counsel*, filed a *Motion For Continuance And For Appointment Of Co-Counsel* wherein *First Habeas Counsel* asked the Court to extend the time in which the Petitioner could file an amended petition and requested that the Court appoint co-counsel to assist *First Habeas Counsel* with the matter. A motions hearing was conducted on March 21, 2013. The Court granted Petitioner's motions. By *Order* entered March 26, 2013, the Court appointed Christopher T. Pritt, Esq., as Petitioner's co-counsel, to assist *First Habeas Counsel* with Petitioner's habeas action (referred to hereinafter as "*Joint Habeas Counsel*").

-11-

33. On April 26, 2013, Petitioner, by and through *Joint Habeas Counsel*, filed a *Pleading* asserting Petitioner's *Losh v. McKenzie* grounds for relief (referred to hereinafter as the *"Initial Losh List"*).

34. On August 2, 2013, based upon the request of *Joint Habeas Counsel*, the Court entered an *Agreed Order Assigning Counsel* wherein the Court relieved Thomas K. Fast, Esq., as counsel for the Petitioner, and assigned Christopher T. Pritt, Esq. (referred to hereinafter as *"Habeas Counsel"*), as Petitioner's sole *Habeas Counsel* in this matter.

35. On December 9, 2013, the Court conducted a status conference in the matter. At that time, as reflected in its *Order* entered December 18, 2013, the Court ordered Petitioner and *Habeas Counsel* to file an amended petition by the close of business December 20, 2013. The Court also scheduled an omnibus evidentiary hearing to be held in the matter on February 10, 2014.

36. On December 24, 2013, the Petitioner, by and through *Habeas Counsel*, filed *Petitioner's Verified Amended Habeas Petition* (referred to hereinafter as the *"Amended Petition"*).

37. By a pleading dated February 4, 2014, and entered February 6, 2014, the Petitioner, by and through *Habeas Counsel*, filed a *Motion To Continue* the omnibus evidentiary hearing scheduled for February 10, 2014. Subsequently, the Court conducted a hearing on the motion on February 6, 2014. As reflected in the Court's *Order* entered February 11, 2014, the Court found that Petitioner had failed to show good cause to continue the matter, and thereby denied Petitioner's *Motion To Continue*.

38. On February 10, 2014, an omnibus evidentiary hearing was conducted by the Court (referred to hereinafter as the *"First Omnibus Hearing"*). At the beginning of the hearing,

-12-

the Court inquired whether Petitioner intended to maintain all grounds cumulatively asserted previously in Petitioner's *Pro Se Petition, Amended Petition,* and *Initial Losh List.* At this time, Petitioner, by and through *Habeas Counsel,* tendered to the Court an amended *Losh* list (referred to hereinafter as the "*Losh List*"), subsequently marked and entered as Petitioner's Exhibit A, containing the following fourteen (14) grounds for relief that Petitioner wished to assert and maintain in his habeas proceeding:

1) **Denial of the right to speedy trial;**

2) **Ineffective assistance of counsel;**

3) **Irregularities in arrest;**

4) **Excessiveness or denial of bail;**

5) **Refusal to subpoena witnesses;**

6) **Lack of full public hearing;**

7) **Constitutional errors in evidentiary rulings;**

8) **Sufficiency of evidence;**

9) **Defendant's absence from part of the proceedings;**

10) **Improper communications between prosecutor or witnesses and jury;**

11) **Cumulative effect of numerous errors;**

12) **Newly discovered evidence;**

13) **Transcript incomplete;** and

14) **Incompetent and intoxicated witnesses testifying with knowledge of prosecution.**

The Petitioner acknowledged on the record that the *Losh List* was a complete and accurate reflection of those grounds for relief that the Petitioner wished to assert and that

-13-

he was freely, voluntarily, and with the assistance of counsel, waiving all other grounds not asserted in the *Losh List*.

The Court then proceeded to hear the testimony of the following:

    a. J.B. Rees, Esq.(*Trial Counsel*);

    b. Scott B. Burgess (*Petitioner*); and

    c. Detective Corporal R.K. Perdue, II (*Lead Investigating Detective*).

At the close of testimony, the Petitioner, by and through *Habeas Counsel*, made an oral motion for leave of the Court to conduct a second evidentiary hearing, if necessary, to elicit the testimony of one additional witness, Ms. Nola Duncan. By its *Order* entered February 11, 2014, the Court granted, with limitations, Petitioner's oral motion to ascertain, assess, and elicit, if necessary, the testimony of Ms. Nola Duncan.

39. On February 24, 2014, the Court received a facsimile transmission from *Habeas Counsel*, wherein counsel advised the Court that an additional evidentiary hearing was necessary to take the sworn testimony of Nola Duncan and any of the Respondent's potential rebuttal witnesses.

40. On February 26, 2014, the Court entered an *Order Scheduling Second Evidentiary Hearing* wherein the Court scheduled a second evidentiary hearing to be conducted on March 24, 2014, for the purpose of taking the sworn testimony of Ms. Nola Duncan and any rebuttal witnesses in regards to Ms. Nola Duncan's testimony.

41. On March 24, 2014, the Court conducted a second evidentiary hearing (referred to hereinafter as the "*Second Omnibus Hearing*"). At the conclusion of this hearing, the

-14-

Court ordered the parties to submit proposed findings of fact and conclusions of law by May 23, 2014.

42. On May 19, 2014, the Respondent filed proposed findings of fact and conclusions of law for the Court's consideration.

43. On June 6, 2014, *Habeas Counsel* filed *Proposed Finding[s] Of Fact And Conclusions Of Law* for the Court's consideration, and a *Motion To Extend Deadline For Filing Proposed Findings Of Fact And Conclusions Of Law* wherein *Habeas Counsel* asserted that due to a transition of the case management systems in his office, the deadline for the submission of findings of fact and conclusions of law was inadvertently overlooked. Based upon the explanation given by *Habeas Counsel*, the Court found good cause to extend the deadline submission and permitted the late filing of Petitioner's *Proposed Finding[s] Of Fact And Conclusions Of Law*.

## ULTIMATE FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The right to petition the Court for a post-conviction writ of habeas corpus is guaranteed by the West Virginia Constitution, Article III, Section Four. Post conviction habeas corpus proceedings are governed by the *West Virginia Rules Governing Post Conviction Habeas Corpus Proceedings in West Virginia*, (referred to hereinafter as "Rule" or "Rules"), and West Virginia Code §53-4A-1, *et seq.* Pursuant thereto, this Court **FINDS** that it has jurisdiction over the subject matter of this proceeding.

-15-

2. West Virginia Code §53-4A-1(a) provides that a person convicted of a crime and incarcerated under a sentence of imprisonment may file a petition for writ of habeas corpus ad subjiciendum asserting certain grounds and seeking release:

> . . . if and only if such contention or contention and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceeding which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence . . . .

West Virginia Code §53-4A-1(a).

3. West Virginia Code §53-4A-1(b) further provides that:

> . . . [A] contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been previously and finally adjudicated only when at some point in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, there was a decision on the merits thereof after a full and fair hearing thereon and the time for the taking of an appeal with respect to such decision has not expired or has expired, as the case may be, or the right of appeal with respect to such decision has been exhausted, unless said decision upon the merits is clearly wrong.

West Virginia Code §53-4A-1(b).

4. West Virginia Code §53-4A-1(c) also provides:

> . . . [A] contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial, or on direct appeal (whether or not said petitioner actually took an appeal), or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or

-16-

sentence, unless such contention or contentions and grounds are such that, under the Constitution of the United States or the constitution of this state, they cannot be waived. ...

West Virginia Code §53-4A-1(c).

5. In general, the post-conviction habeas corpus statute, W.Va.Code, 53-4A-1 et seq. (1967) contemplates that every person convicted of a crime shall have a fair trial in the circuit court, an opportunity to apply for an appeal, and one omnibus post-conviction habeas corpus hearing at which he may raise any collateral issues which have not previously been fully and fairly litigated. Losh v. McKenzie, 166 W. Va. 762, 764, 277 S.E.2d 606, 609 (1981).

6. A person convicted of a crime is ordinarily entitled to only one post-conviction habeas corpus proceeding. *See* Syl. Pt. 1, in part, Gibson v. Dale, 173 W.Va. 681, 319 S.E.2d 806 (1984); Syl. Pt. 1, Markley v. Coleman, 215 W.Va. 729, 731, 601 S.E.2d 49, 51 (2004), *per curiam*.

7. The Petitioner is currently incarcerated in Mount Olive Correctional Center on sentences imposed by this Court as a result of a Fayette County Petit Jury convicting him of murder in the first degree, a felony, as a result of the death of Kenneth E. Pritt occurring during the commission of the felony crime of arson in the first degree, with a recommendation of mercy. The Court **FINDS** that the contentions asserted in Petitioner's *Amended Petition*, and the relief sought thereby, are appropriately before this Court for consideration.

8. At the omnibus habeas corpus hearing, a petitioner is required to raise all grounds known or that reasonably could be known by the petitioner. Markley v. Coleman, 215 W. Va. 729, 732-33, 601 S.E.2d 49, 52-53 (2004). At the *First Omnibus Hearing*, the Petitioner specifically informed the Court that the fourteen (14) grounds alleged in Petitioner's *Losh*

-17-

*List* were the only grounds being asserted in this habeas action. The Petitioner was further informed that any grounds not asserted were waived. The Petitioner advised the Court that he knowingly understood that he was waiving all other grounds except for 1) Denial of right to speedy trial; 2) Ineffective assistance of counsel; 3) Irregularities in arrest; 4) Excessiveness or denial of bail; 5) Refusal to subpoena witnesses; 6) Lack of full public hearing; 7) Constitutional errors in evidentiary rulings; 8) Sufficiency of evidence; 9) Defendant's absence from part of the proceedings; 10) Improper communications between prosecutor or witnesses and jury; 11) Cumulative effect of numerous errors; 12) Newly discovered evidence; 13) Transcript incomplete; and 14) Incompetent and intoxicated witnesses testifying with knowledge of prosecution. The Court **FINDS** and **CONCLUDES** that the Petitioner, with the assistance of *Habeas Counsel*, has knowingly waived all other contentions and grounds that were not asserted in his *Losh List*.

9. "[A] [c]ircuit court denying or granting relief in [a] habeas corpus proceeding is statutorily required to make specific findings of fact and conclusions of law relating to each contention advanced by petitioner, and to state [the] grounds upon which [the] matter was determined." Syl. Pt. 4, Markley v. Coleman, 215 W. Va. 729, 731, 601 S.E.2d 49, 51 (2004); *See* Syl. Pt. 1, State ex rel. Watson v. Hill, 200 W.Va. 201, 488 S.E.2d 476 (1997); *See also* Syl. Pt. 8, State ex rel. Vernatter v. Warden, West Virginia Penitentiary, 207 W.Va. 11, 14, 528 S.E.2d 207, 210 (1999).

-18-

## ANALYSIS OF THE GROUNDS ASSERTED BY PETITIONER

**I.** ***Random Grounds Asserted By The Petitioner That Were Abandoned Or Are Not Cognizable In This Habeas Proceeding***

The Petitioner asserted a total of fourteen (14) grounds for relief in his *Losh List. See* Procedural History *supra*, ¶ 38, pp. 12-14. In the interest of brevity, this Court will collectively analyze the following seven (7) alleged errors asserted as grounds for relief: 1) Irregularities in arrest; 2) Lack of a full public hearing; 3) Constitutional errors in evidentiary rulings; 4) Sufficiency of the evidence; 5) Improper communications between prosecutor or witnesses and jury; 6) Newly discovered evidence; and 7) Transcript incomplete (referred to hereinafter as the *"Seven Alleged Errors"*).

The writ of habeas corpus is designed to remedy a violation of the rights and protections afforded an accused by both the West Virginia Constitution and the United States Constitution. Pethel v. McBride, 219 W. Va. 578, 589, 638 S.E.2d 727, 738 (2006). The right to relief afforded by the writ of habeas corpus is therefore limited. Id. at 588, 638 S.E.2d at 737. Even when alleged errors and irregularities are supported by the record, if they do not infringe upon a fundamental state or federal constitutional right, they are simply not reviewable in a habeas proceeding. *See* Syl. Pt. 4, State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805 (1979) (noting simple trial error not reviewable in habeas); Syl. Pt. 1, 2, Ex parte Evans, 42 W. Va. 242, 24 S.E. 888 (1896) (explaining that mere irregularity and error in process or proceedings not sufficient to warrant remedy in habeas corpus); State ex rel. Wimmer v. Trent, 199 W.Va. 644, 648, 487 S.E.2d 302, 306 (1997) (explaining that the Court allowing certain jurors to remain empanelled and improper remarks by the prosecutor were issues not cognizable in the habeas proceeding); State ex rel. Edgell v. Painter, 206 W.Va. 168, 522 S.E.2d 636 (1999)

-19-

(finding that denial of a motion for acquittal is not a ground cognizable in a habeas proceeding); Hatcher v. McBride, 221 W.Va. 5, 11, 650 S.E.2d 104, 110 (2006) quoting Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir.1960) (observing that "[a]bsent 'circumstances impugning fundamental fairness or infringing specific constitutional protections,' admissibility of evidence does not present a state or federal constitutional question."); State ex rel. Farmer v. McBride, 224 W. Va. 469, 480, 686 S.E.2d 609, 620 (2009) (finding that 4 of 6 errors alleged by Petitioner are not subject to review in habeas). As has been clearly recognized by the Supreme Court Of Appeals, "[i]mprisonment under the process or order of a court of competent jurisdiction, however irregular or erroneous, not being void, is not illegal imprisonment, so as to warrant discharge on habeas corpus." Syl. Pt. 2, Ex parte Evans, 42 W. Va. 242, 24 S.E. 888 (1896).

Likewise the federal courts have taken a parallel approach. *See* United States v. Mechanik, 475 U.S. 66, 71-72, 106 S. Ct. 938, 942, 89 L. Ed. 2d 50 (1986) (providing that errors, defects, irregularities, or variances not affecting substantial rights shall be disregarded); Frank v. Mangum, 237 U.S. 309, 326, 35 S. Ct. 582, 585, 59 L. Ed. 969 (1915) (noting that relief cannot be had in habeas corpus for mere errors committed by the court as a habeas is not a substitute for a writ of error); Nelson v. Hancock, 210 F. Supp. 60, 63 (D.N.H. 1962) (stating "[e]rrors and irregularities prior to trial can never be grounds for issuing the writ requested unless they somehow resulted in an unfair trial." (citations omitted)); Howard v. Garvin, 844 F. Supp. 173, 175 (S.D.N.Y. 1994) citing United States v. Mechanik, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (noting deficiencies in preliminary steps, including arrest, which do not affect the validity of conviction cannot support the conviction being vacated).

-20-

In addition to establishing a constitutional violation, a habeas petitioner also bears the burden of establishing by a preponderance of the evidence that he is entitled to the relief sought. *See* Syl. Pt. 1, 2, State ex rel. Scott v. Boles, 150 W. Va. 453, 147 S.E.2d 486, 487 (1966). A petitioner must establish that his contention has merit; relief will not be granted in habeas for claims which are undeveloped by a petitioner and not adequately supported by the record. *See* Markley v. Coleman, 215 W. Va. 729, 734, 601 S.E.2d 49, 54 (2004) (per curiam) citing Losh v. McKenzie, 166 W. Va. 762, 771, 277 S.E.2d 606, 612 (1981) (noting that allegations must have adequate factual support for appointment of counsel, hearing, or issuance of the writ); *See also* n. 7, id. (drawing a distinction between habeas corpus allegations asserted that lack adequate factual support warranting review and randomly selected habeas corpus allegations that are without merit because they are undeveloped and unsupported by the record). "[A] [mere] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." State ex rel. Hatcher v. McBride, 221 W. Va. 760, 766, 656 S.E.2d 789, 795 (2007) quoting State Dept. Of Health v. Robert Morris N., 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (alterations from original).

In the case of each of the *Seven Alleged Errors* asserted by the Petitioner, *supra*, the Petitioner did not present any substantive evidence or testimony to support the allegations. Moreover, a thorough review of the record does not reveal even minimal support for any of the *Seven Alleged Errors*. In any event, even if this Court assumes *arguendo* that each of the Petitioner's *Seven Alleged Errors* is supported by the record, the Petitioner did not provide any examples, analysis, explanation, legal citation, or proof, to show even remotely how any of the *Seven Alleged Errors* prejudiced the Petitioner's trial, or impacted the Petitioner's state or federal

-21-

constitutional rights. Taking the record as a whole and the relevant law into consideration, the *Seven Alleged Errors* simply do not rise to a level that would implicate the Petitioner's state or federal constitutional rights.

Moreover, Petitioner's issues regarding constitutional errors in evidentiary rulings and the sufficiency of the evidence were the only issues, among the *Seven Alleged Errors*, that were raised on direct appeal. *See* Procedural History *supra*, ¶ 29, pp. 10-11. The Petitioner had the opportunity to, and did, litigate these issues before the trial court and on direct appeal. The Supreme Court of Appeals fully adjudicated those issues through its affirmation of the lower court's decision by *memorandum opinion*. Id.

Based on the foregoing, this Court **FINDS** that Petitioner's *Seven Alleged Errors* regarding 1) Irregularities in arrest; 2) Lack of a full public hearing; 3) Constitutional errors in evidentiary rulings; 4) Sufficiency of the evidence; 5) Improper communications between prosecutor or witnesses and jury; 6) Newly discovered evidence; and 7) Transcript incomplete, are unsupported by the record. As the Petitioner failed to develop and provide any additional substantive support for the *Seven Alleged Errors*, this Court **FINDS** and **CONCLUDES** that each of the *Seven Alleged Errors* are without merit and are deemed to have been knowingly and intelligently waived and abandoned by the Petitioner.

This Court further **FINDS** and **CONCLUDES** that even if the *Seven Alleged Errors* asserted by the Petitioner were supported by the record, the Petitioner is still entitled to no relief in this proceeding because none of the *Seven Alleged Errors* rise to a constitutional level cognizant in this habeas proceeding.

The Court will now, in turn, address Petitioner's remaining grounds for relief.

-22-

## II.    *Denial Of The Right To A Speedy Trial*

The Petitioner asserts as a ground for relief that he was denied his state and federal constitutional right to a speedy trial. Specifically, the Petitioner contends that he is entitled to relief because Petitioner was not tried within the term of Petitioner's indictment and that during the first term, and subsequent terms, Petitioner's counsel requested continuances without his knowledge or consent, and as a result of these continuances, the Petitioner's federal and state constitutional right to a speedy trial was violated.

The Supreme Court of Appeals has established that "[t]he right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and Federal constitution." Syl. Pt. 1, State v. VanHoose, 227 W. Va. 37, 39, 705 S.E.2d 544, 546 (2010) (citing U.S. Const. Amend. VI; W. Va. Const., Art. 3, § 14; Syl. Pt. 1, State v. Foddrell, 171 W.Va. 54, 297 S.E.2d 829 (1982)).

In West Virginia, speedy trial rights can be broken down into two rules: the one (1) term rule under West Virginia Code § 62-3-1 and the three (3) term rule under West Virginia Code § 62-3-21. Pursuant to West Virginia Code § 62-3-1 "[w]hen an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, ***unless good cause be shown for a continuance***, be tried at the same term." (***emphasis added***). Likewise, under West Virginia Code,

> [e]very person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless [1] the failure to try him was caused by his insanity; or [2] by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or [3] by a

-23-

continuance granted on the motion of the accused; or [4] by reason of his escaping from jail, or failing to appear according to his recognizance, or [5] of the inability of the jury to agree in their verdict.

W. Va. Code Ann. § 62-3-21 (**numerical listing added**).

In the case of State ex rel. Shorter v. Hey, 170 W. Va. 249, 294 S.E.2d 51 (1981), the Supreme Court of Appeals clarified that the two rules individually implicate separate and distinct speedy trial rights for a defendant. The one term rule provides a defendant with a *statutory right* to a trial in the term of his indictment, whereas, the three term rule provides a defendant with the *constitutional right* to be tried within three regular terms of court, exclusive of the term of indictment. *See* Syl. Pt. 1, id., at 251, 294 S.E.2d at 53 (citing State ex rel. Smith v. DeBerry, 146 W.Va. 534, 538, 120 S.E.2d 504, 506 (1961)) (indicating the three term rule is the legislative adoption of what constitutes a speedy trial under both the federal and the state constitution); *See also* Syl. Pt. 2, State v. VanHoose, 227 W. Va. 37, 39, 705 S.E.2d 544, 546 (2010).

Having established the rules in West Virginia governing Petitioner's constitutional right to a speedy trial, this Court will now analyze Petitioner's speedy trial contention under both the one term and the three term rule.

### A. Petitioner's speedy trial right under the One Term Rule

Petitioner had the statutory right to be tried within the same term of Court as his indictment unless good cause could be shown for continuing Petitioner's trial beyond the first term. *See* discussion *supra*, pp. 23-24.

The Petitioner was arraigned on January 22, 2010. *See Arraignment Order* entered January 27, 2010. The Petitioner's trial was scheduled to begin, during this same term of court, on March 9, 2010. *See* id. On March 3, 2010, the State filed a *Notice Of Intent To Use 404(b)*

-24-

*Evidence.* On March 5, 2010, in response to said motion, the Petitioner, by and through *Initial Counsel,* and the Prosecutor, submitted onto the Court an *Agreed Continuance Order* wherein Petitioner sought to have the March 9, 2010, trial continued so as to grant *Initial Counsel* additional time to investigate the "allegations set forth in the State's motion to introduce evidence pursuant [*sic*] Rule 404(b) of the West Virginia Rules of Evidence." *See Agreed Continuance Order* entered March 5, 2010. The Court subsequently granted Petitioner's motion and entered the *Agreed Continuance Order* that same day. *See* id.

On March 9, 2010, the Court conducted a hearing on Petitioner's previously filed motions. *See Motions Hearing Order* entered March 15, 2010. At this hearing, *Initial Counsel* acknowledged in the presence of Petitioner that the matter had been continued and that he was seeking permission from the Petitioner to continue the matter to the next term of court. *See* Pre-Trial Motions Hearing Transcript, p. 72. The Petitioner did not contradict *Initial Counsel's* proffer, nor raise any objection to a continuance at this time. *See* id. At the conclusion of the hearing, the Court directed *Initial Counsel* to consult with the Judge's secretary and obtain an available date for the trial to be held. Shortly thereafter, *Initial Counsel,* along with State's counsel, submitted, and the Court subsequently entered, a signed proposed *Motions Hearing Order* wherein the results of the March 9, 2010, motions hearing were reflected and the trial was re-scheduled to the beginning of the next term of court. *See Motions Hearing Order* entered March 15, 2010.

Considering all of the surrounding factual circumstances, and the turn of events following the hearing that was held on March 9, 2010, this Court is of the opinion that the Petitioner did consent to his trial being re-scheduled to the next term of court.

This Court's assessment of Petitioner's contention that he was denied his statutory right to a speedy trial under the one term rule is unaltered even if this Court assumes arguendo that the Petitioner did not consent to his trial being continued outside the term of his indictment.

"[The] mandate that an accused shall be tried at the same term in which the indictment was returned 'unless good cause is shown for a continuance', [is] not violated when the record reveals that the time consumed for the proper treatment of the defendant's motions and pleadings in furtherance of his defense constituted 'good cause' for a continuance." Syl. Pt. 6. State v. Grimmer, 162 W. Va. 588, 589, 251 S.E.2d 780, 782-83 (1979) (overruled on other grounds). As the Supreme Court of Appeals noted in the case of *State ex rel. Shorter v. Hey*,

> in a criminal case, pre-trial procedures and the nature and evidence relating to the offense to be tried may contribute to the difficulty in trying a defendant in the term of his indictment. This Court has held, for example, that a criminal defendant's state and federal constitutional rights are violated if his counsel is denied sufficient time to adequately prepare for trial.

170 W. Va. 249, 256, 294 S.E.2d 51, 58 (1981) (citing State ex rel. Rogers v. Casey, 166 W. Va. 179, 273 S.E.2d 356 (1980)).

Additionally, the Supreme Court of Appeals observed in *State v. Vanhoose*, that "if the delay in bringing the accused to trial is attributable to the accused in any manner, the accused cannot take advantage of such delay and contend that he has been denied a speedy trial." State v. VanHoose, 227 W. Va. 37, 49, 705 S.E.2d 544, 556 (2010) (citing State ex rel. Spadafore v. Fox, 155 W.Va. 674, 679, 186 S.E.2d 833, 836 (1972)). Likewise, "[i]f [an accused] instigates a proceeding which forces a continuance of the case at a particular term of court, he will not be permitted to take advantage of the delay thus occasioned." State ex rel. Spadafore v. Fox, 155 W. Va. 674, 678-79, 186 S.E.2d 833, 836 (1972).

Although both *Spadafore* and *Vanhoose, supra,* relate to delays assessed by the Supreme Court of Appeals under the three term rule, the same equitable considerations applied by the Court in those cases, could also be applied to an analysis of similar circumstances under the one term rule. Simply put, an accused cannot create a catch twenty-two situation by requesting a continuance, or obtaining a delay to benefit the presentation of his case, and then seek relief by contending a violation of the accused's statutory right to a trial in the same term of court as the indictment.

In a time where Judges' dockets are overburdened with pressing cases and an available slot on the docket is a rarity, an accused is not entitled to pick and choose his particular trial date, and once the original first term trial date is continued, a congested docket may ultimately necessitate the trial being rescheduled to the next term of court. *See generally* State ex rel. Shorter v. Hey, 170 W. Va. 249, 255-57, 294 S.E.2d 51, 57-60 (1981) (holding that a trial judge may continue a case beyond the term of indictment on court's own motion, and for good cause, due to congested trial docket). The Court is however, statutorily required to make every reasonable effort to provide the Petitioner with the opportunity to have his trial within the same term as his indictment. *See* discussion *supra*, pp. 23-24.

In Petitioner's case, the Court did just that; the Court scheduled the Petitioner's trial to begin on a date almost two months after the Petitioner was indicted, within the same term as Petitioner's indictment, and it was the ***Petitioner***, not the State or the Court, that sought to continue the March 9, 2010, trial. The continuance clearly constituted good cause to the benefit of the Petitioner because it enabled *Initial Counsel* to further investigate potential 404(b) evidence that the State was seeking to present against Petitioner at his trial. Following the

continuance, Petitioner's *Initial Counsel* was ultimately successful in preventing the State from introducing the subject 404(b) evidence. The Petitioner cannot now be heard to complain that, although he requested and benefitted from the initial continuance, he did not consent to the trial being rescheduled outside the first term of court.

Further, the Petitioner did not provide any proof to challenge whether good cause existed to continue his trial beyond the term of his indictment, rather he relied wholly on his assertion that his rights under W.Va. Code § 62-3-1 were violated because he allegedly never consented to his trial being continued beyond the first term of court. *See* Syl. Pt. 2, Pitsenbarger v. Nuzum, 172 W.Va. 27, 303 S.E.2d 255 (1983) (establishing that the burden of showing that good cause didn't exist is on the party seeking the protection of the one-term statute). Further, he provided no proof that he suffered any prejudice whatsoever by his *Initial Counsel* agreeing to re-schedule his trial to begin only fifteen days into the next term of court. *See generally* id., at 29, 303 S.E.2d at 257 (discussing a showing of substantial prejudice as a result of the delay); *See also* Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) (addressing whether delay substantially prejudiced defendant).

Petitioner's contention not only fails under a factual and equitable analysis, but under a constitutional analysis as well.

"[W]hereas [the one term rule under] W.Va.Code, 62–3–1, provides a defendant with a statutory right to a trial in the term of his indictment, it is [the three term rule under] W.Va.Code, 62–3–21, rather than W.Va.Code, 62–3–1, which is the legislative adoption or declaration of what ordinarily constitutes a speedy trial within the meaning of U.S.Const., amend. VI and W.Va.Const., art. III, § 14. Syl. Pt. 1, State ex rel. Shorter v. Hey, 170 W. Va. 249, 254, 294

S.E.2d 51, 56 (1981) (citations omitted); *See generally* Syl. Pt. 2, <u>State v. Carrico</u>, 189 W. Va. 40, 42, 427 S.E.2d 474, 476 (1993); Syl.Pt. 1, <u>Good v. Handlan</u>, 176 W.Va. 145, 342 S.E.2d 111 (1986). "[T]he one-term rule does not embody a right of constitutional dimension, but 'provides a personal right to the defendant to be tried more expeditiously than the Constitution requires.'" <u>State v. McCartney</u>, 228 W. Va. 315, 324, 719 S.E.2d 785, 794 (2011) (quoting <u>State ex rel. Workman v. Fury</u>, 168 W.Va. 218, 221, 283 S.E.2d 851, 853 (1981).

> Under West Virginia law,
>
> state post-conviction relief is only available when (1) there is a denial or infringement upon a person's constitutional rights; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the legal maximum; or (4) the conviction would have been subject to collateral attack by statute or at common law prior to the adoption of W. Va.Code § 53–4A–1.

<u>State ex rel. Thompson v. Ballard</u>, 229 W. Va. 263, 269, 728 S.E.2d 147, 153 (2012) (citing <u>Pethel v. McBride</u>, 219 W.Va. 578, 589, 638 S.E.2d 727, 738 (2006)).

As the one term rule is a West Virginia statutory right rather than a constitutional right under the state and federal constitution, Petitioner's contention under the one term rule is simply not cognizable in this habeas proceeding. *See generally* Syl. Pt. 4, <u>State ex rel. McMannis v. Mohn</u>, 163 W.Va. 129, 254 S.E.2d 805 (1979) (noting that only errors implicating constitutional rights are reviewable in a habeas proceeding); <u>Pethel v. McBride</u>, 219 W. Va. 578, 638 S.E.2d 727 (2006) (finding that a violation of the statutory IAD right is not reviewable in a habeas proceeding).

Based upon the foregoing, this Court **FINDS** and **CONCLUDES** that Petitioner is entitled to no relief upon his contention that his federal and state constitutional rights were violated when he was not tried within the same term as his indictment because his contention is

factually and equitably without merit and does not implicate constitutional rights reviewable in a habeas proceeding.

### B. Petitioner's speedy trial right under the Three (3) Term Rule

The Court must now determine whether Petitioner's state or federal constitutional right to a speedy trial was violated when the Petitioner was indicted on January 12, 2010, and was not brought to trial until April 26, 2011.

Petitioner's constitutional right to a speedy trial is embodied within the three-term rule of W.Va. Code § 62–3–21. *See* discussion *supra* pp. 23-24, 28-29; *See also* Syl. Pt. 2, State v. Carrico, 189 W. Va. 40, 42, 427 S.E.2d 474, 476 (1993) (citing Syl. Pt. 1, Good v. Handlan, 176 W.Va. 145, 342 S.E.2d 111 (1986)). Pursuant to the three-term rule, a defendant may be discharged from further prosecution of an offense if three regular terms of court pass without the defendant being brought to trial, unless the delay was necessitated by one of the enumerated exceptions contained within the statute. *See* discussion *supra*, pp. 23-24; *See generally* Syl. Pt. 4, State v. Carrico, 189 W. Va. 40, 42, 427 S.E.2d 474, 476 (1993) (citing Syl. Pt. 1, State ex rel. Smith v. DeBerry, 146 W.Va. 534, 120 S.E.2d 504 (1961)). The term at which the indictment was returned against the defendant is not counted as one of the three regular terms necessary for discharge. *See* Syl. Pt. 1, State ex rel. Spadafore v. Fox, 155 W. Va. 674-675, 186 S.E.2d 833-834 (1972); *See also* Syl. Pt. 4, State v. Carrico, 189 W. Va. 40, 42, 427 S.E.2d 474, 476 (1993).

In *Barker v. Wingo*, the United States Supreme Court enunciated four key factors to consider when assessing whether a defendant's trial has been unreasonably delayed: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101

(1972); *See also* <u>State v. Cox</u>, 162 W. Va. 915, 918-19, 253 S.E.2d 517, 519 (1979) (determining that the controlling federal law on a speedy trial issue is outlined in the United States Supreme Court case of *Barker v. Wingo*); Syl. Pt. 2, <u>State v. Foddrell</u>, 171 W.Va. 54, 297 S.E.2d 829 (1982) (adopting the standards enunciated in *Barker v. Wingo*).

In the case of *State v. Carrico*, the Supreme Court of Appeals, after completing a comparison between the speedy trial rights afforded under W.Va. Code § 62-3-21 and the standards outlined in *Barker v. Wingo*, established, "[i]f a conviction is validly obtained within the time set forth in the three-term rule, W.Va.Code 62-3-21 [1959], then that conviction is presumptively constitutional under the speedy trial provisions of the Constitution of the United States, Amendment VI, and W.Va. Constitution, Art. III, § 14." Syl. Pt. 3, <u>State v. Carrico</u>, 189 W. Va. 40, 42, 427 S.E.2d 474, 476 (1993).

In the case at bar, Petitioner was indicted during the January 2010 term of court. The Petitioner was not brought to trial during the subsequent May or September terms of court. Petitioner's trial commenced during the January 2011 term of court.

Applying these facts to the requirements of the three-term rule, it is clear to this Court that the Petitioner was tried within three regular terms of court, exclusive of the term of indictment, consistent with the speedy trial mandates of the West Virginia Constitution, and presumably consistent with the speedy trial provisions of the United States Constitution.

If this Court looked at only the facts on their face, it would have no difficulty arriving at the conclusion that the Petitioner's state and federal speedy trial rights were not violated. However, upon a review of the underlying facts, this Court becomes even more steadfast in its

-31-

determination that the Petitioner was provided a jury trial without even an inkling of unreasonable delay.

After the Petitioner moved for a continuance of his first scheduled trial, the matter was rescheduled to begin on May 26, 2010, during the May term of Court. *See Motions Hearing Order* entered March 15, 2010. On May 19, 2010, only seven (7) days before trial, the Petitioner filed a *Motion To Remove Counsel And Appoint Substitute Counsel. See* Procedural History *supra*, ¶ 9, p. 5. After a hearing on Petitioner's motion, the Court relieved *Initial Counsel* and continued the May 26, 2010, trial generally. *See Order Relieving Counsel And Continuing Trial,* entered May 21, 2010.

On May 27, 2010, the Court appointed *Third Appointed Counsel* to represent the Petitioner. *See Order* entered May 27, 2010. On September 1, 2010, the Petitioner, *pro se*, filed a handwritten *Motion To Dismiss Counsel*, wherein the Petitioner moved the Court to remove *Third Appointed Counsel* as counsel for the Petitioner. *See* Procedural History *supra*, ¶ 12, pp. 5-6. The Court denied Petitioner's *Motion To Dismiss Counsel* as frivolous and without merit. *See Order* entered September 8, 2010. Subsequently, on September 13, 2010, the Court conducted a hearing in relation to the continuance of Petitioner's trial from the May term of court to the September term of court. *See* Procedural History *supra*, ¶ 14, p. 6. The crux of this hearing was that *Third Appointed Counsel* and State's counsel had agreed on, and prepared an *Agreed Continuance Order* wherein Petitioner's trial would be scheduled during the September term of court, yet the Petitioner would not consent to this agreement. *Id.* Petitioner's trial, during the May term of court, had already been continued generally as a result of the Petitioner initiating proceedings to remove *Initial Counsel* immediately before that trial. *See* Procedural History

-32-

*supra*, ¶ 9, p. 5. The Court ultimately continued the matter to the September term of court and scheduled Petitioner's trial to begin on October 18, 2010. *See Continuance Order* entered September 29, 2010; *See also Order* entered September 22, 2010.

On October 12, 2010, the Petitioner, by and through *Third Appointed Counsel*, filed a *Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof* and a *Motion For Continuance*, wherein the latter alleged that *Third Appointed Counsel* needed additional time to prepare for Petitioner's trial. *See* Procedural History *supra*, ¶ 17, p. 7. Following a hearing conducted on October 13, 2010, the Court granted both of Petitioner's motions and rescheduled Petitioner's trial to begin on January 25, 2011, during the January term of court. *See Order Granting Defendant's Motion For Continuance And Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof* entered November 29, 2010.

By a handwritten letter dated December 4, 2010, the Petitioner, *pro se*, moved to disqualify the presiding Judge, the Honorable Judge John W. Hatcher, Jr. from making further rulings in his case due to potential bias and prejudice. *See* Procedural History *supra*, ¶ 20, p. 8. The Honorable John W. Hatcher, Jr., voluntarily recused himself from Petitioner's case and notified the Petitioner that said recusal and reassignment may force Petitioner's January 25, 2011, trial to be rescheduled. *See Order* entered December 10, 2010.

On January 6, 2011, the Petitioner, *pro se*, filed a handwritten *"Motion to surpress [sic] Action taken [sic] statement of Corporal S.R. Morris on July 19, 2009"* and *Motion to remove counsel, and appoint substitute counsel. See* Procedural History *supra*, ¶ 22, p. 8-9. The Court, the Honorable Judge John W. Hatcher, Jr. presiding, had already ruled on Petitioner's motion to suppress almost ten (10) months earlier. *See Motions Hearing Order* entered March 15, 2010. On

January 10, 2011, the day before the January term of court began, the Court, the Honorable Judge Paul M. Blake, Jr. presiding, entered an *Agreed Continuance Order* continuing the unresolved matter from the September 2010 term of court to the January 2011 term of court. *See Agreed Continuance Order* entered January 10, 2011. Petitioner's trial had already been continued to the January 2011 term of court by a prior order of the Court under the Honorable Judge John W. Hatcher, Jr., upon the motion of the Petitioner. *See Order Granting Defendant's Motion For Continuance And Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof* entered November 29, 2010. On January 19, 2011, the Court conducted a hearing on Petitioner's *Motion to remove counsel, and appoint substitute counsel,* whereat the Court scheduled Petitioner's trial to begin on April 26, 2011, during the January term of court. *See Status Conference Order* entered April 26, 2011. On January 21, 2011, the Court entered an *Order* granting Petitioner's *Motion to remove counsel, and appoint substitute counsel,* and thereby relieved *Third Appointed Counsel* and appointed *Trial Counsel* to represent the Petitioner. *See Order* entered January 21, 2011. The Petitioner's trial was held, without further delay, on April 26, 2011, prior to the end of the January term of Court. *See* Trial Transcript-Volume I.

Applying the foregoing facts to the standards enunciated in *Barker, supra,* this Court is of the opinion that Petitioner's trial was not unreasonably delayed.

First, the individual delays were for relatively short periods of time, never spanning more than roughly four months. Petitioner was given the opportunity to go to trial, for the first time, only fifty-five (55) days after his indictment was returned. Further, only one year, three months,

and thirteen days passed between Petitioner's indictment and the day Petitioner's trial commenced.

Second, the delays were all attributed in some manner to the actions of the Petitioner. Petitioner's first trial date was continued at the request of, and benefit to, the Petitioner. Petitioner then initiated a *Motion To Remove Counsel And Appoint Substitute Counsel* only seven (7) days prior to Petitioner's second trial date. Ninety-Seven days after the appointment of *Third Appointed Counsel*, and forty-seven days prior to the October 2010 trial date, the Petitioner moved to dismiss *Third Appointed Counsel*. This motion was denied by the Court. The Petitioner subsequently moved to obtain a transcript of the grand jury minutes and also moved to continue the October 2010 trial only six (6) days prior to the trial. Petitioner's motions were granted and the trial was rescheduled to commence on January 25, 2011. In December 2010, the Petitioner moved to disqualify the presiding Judge. After the presiding Judge recused himself and Petitioner's case was reassigned to the Honorable Judge Paul Blake, Jr., the Petitioner once again moved to have *Third Appointed Counsel* removed as counsel for the Petitioner. The new presiding Judge granted the Petitioner's motion, appointed new counsel for the Petitioner, and re-scheduled the trial for April 26, 2011.

Third, the record reveals that the Petitioner did on various occasions raise the issue of his right to a speedy trial. *See* Procedural History *supra*, ¶¶ 14, 22, pp. 6, 8-9; *See also* handwritten, *pro se*, *Writ Of Habeas Corpus*, dated November 29, 2010 (directed to Fayette County Circuit Court demanding discharge from prosecution for alleged violation of the one term rule). However, contrary to his assertion, the Petitioner initiated multiple proceedings which

necessitated the continuance of every trial date that was scheduled for the Petitioner prior to Petitioner's April 2011 jury trial.

Finally, although no single factor is determinative when applying the *Barker* balancing test, strong consideration should be given to whether or not the Petitioner was prejudiced by the occurrent delay. *See* Barker v. Wingo, 407 U.S. at 533, 92 S. Ct. at 2193. Likewise, the Supreme Court of Appeals has placed significant emphasis on the "prejudice" factor, noting that "[u]ntil there is some delay which is presumptively prejudicial there is no necessity for inquiry into the other factors that go into the balance." State v. VanHoose, 227 W. Va. 37, 46, 705 S.E.2d 544, 553 (2010); State v. Drachman, 178 W.Va. 207, 212, 358 S.E.2d 603, 608 (1987).

In the case at bar, the Court attempted to provide the Petitioner with a trial on four (4) separate occasions, and as stated *supra*, every trial date was delayed for a reason that was in some manner attributable to the Petitioner. Further, the record does not contain, nor did the Petitioner present, any evidence that he was prejudiced by any of the delays that resulted in Petitioner's trial being held one year, three months, and thirteen days after his indictment.

Collectively, the Petitioner seems to assert that the Court should have ignored Petitioner's numerous motions and focused wholly on a quick disposition in the matter. Such action by the Court would have had a host of other constitutional due process and fair trial implications. This Court will simply not allow the Petitioner, in his quest to achieve a desired outcome, to make a mockery of the West Virginia Constitution, or the United States Constitution, by pitting the individual constitutional trial rights against one another.

Based upon all of the foregoing, this Court **FINDS** and **CONCLUDES** that Petitioner's contention that he was denied his state and federal constitutional right to a speedy trial is without

merit as the Petitioner was provided a trial without unreasonable delay consistent with the mandates of the West Virginia Constitution and the United States Constitution.

## III. *Ineffective Assistance Of Counsel*

Petitioner asserts that his *Trial Counsel* and *Appellate Counsel* failed to provide him with competent and effective assistance of counsel as contemplated by both the West Virginia Constitution and the United States Constitution.

The Supreme Court of Appeals has stated, "[o]ur law is clear in recognizing that the Sixth Amendment of the federal constitution and Article III, § 14 of the state constitution guarantee not only the assistance of counsel in a criminal proceeding but that a defendant has the right to effective assistance of counsel." Ballard v. Ferguson, 232 W. Va. 196, 751 S.E.2d 716, 720 (2013) (citing Cole v. White, 180 W. Va. 393, 395, 376 S.E.2d 599, 601 (1988)).

"In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*: (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, State v. Miller, 194 W. Va. 3, 6, 459 S.E.2d 114, 117 (1995) (citation omitted). "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the

-37-

circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, id. at 6-7, 459 S.E.2d at 117-118.

In regards to the objective standard to be applied to ineffective assistance of counsel claims, the *Miller* Court further explained,

> [i]n other words, we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range." The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most *good* lawyers would have done. We only ask whether a *reasonable* lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

Id. at 16, 459 S.E. 2d at 127 (*emphasis added*).

The Court has thoroughly reviewed the record in this matter and considered the arguments of counsel and the evidence presented at the *First Omnibus Hearing* and *Second Omnibus Hearing* in relation to the contentions asserted under Petitioner's ineffective assistance of counsel claim. Pursuant to the guidance offered in *Legursky*, this Court will not address both prongs of the test; the Court will only conduct analysis under the prong that the assertion fails to meet. State ex rel. Daniel v. Legursky, 195 W. Va. 314, 321, 465 S.E.2d 416, 423 (1995) (stating a court "need not address both prongs . . . but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test."). However, this Court may address both prongs, or offer additional analysis, if it deems that such extensive analysis would be helpful in fully addressing Petitioner's contention.

## A. Ineffective assistance of appellate counsel

Initially, this Court will address Petitioner's contentions regarding the ineffectiveness of his appellate counsel, as these contentions can be readily disposed of without the need for in depth analysis.

As discussed *supra*, ineffective assistance of counsel claims are governed by the *Strickland/Miller* test. Ineffective assistance of appellate counsel claims are governed by the same *Strickland/Miller* standards. *See* Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756 (2000); Smith v. Murray, 477 U.S. 527, 535–536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Lucas v. McBride, 505 F. Supp. 2d 329, 350-51 (N.D.W. Va. 2007) (citing Smith v. State of South Carolina, 882 F.2d 895 (4th Cir.1989), cert. denied, 493 U.S. 1046, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990); *See also* State v. VanHoose, 227 W. Va. 37, 50, 705 S.E.2d 544, 557 (2010); State ex rel. Adkins v. Dingus, 232 W. Va. 677, 753 S.E.2d 634, 641 (2013).

The Petitioner asserted in his *Pro Se Petition* that *Appellate Counsel* was ineffective because 1) *Appellate Counsel* failed to raise the issue of Petitioner's denial of a speedy trial on appeal; and 2) *Appellate Counsel* failed to address the numerous failures allegedly committed by trial counsel on appeal. The Petitioner did not, however, delineate in his *Amended Petition*, or the *Losh List*, any specific incidents where *Appellate Counsel* is alleged to have been deficient. Further, Petitioner did not develop or provide any evidence in support of his contentions concerning the alleged deficiencies of *Appellate Counsel*.

Based upon the foregoing, this Court **FINDS** and **CONCLUDES** that Petitioner's vague assertions regarding the alleged ineffective assistance of *Appellate Counsel* have been knowingly waived and abandoned.

The Court would note however, that Petitioner's contentions, even if more thoroughly developed, would still fail under a *Strickland/Miller* analysis.

As this Court exhaustively explained *supra*, the Petitioner's state and federal constitutional speedy trial rights were not violated. *See* discussion *supra*, pp. 24-37.

> In reviewing the performance of appellate counsel, the court must accord appellate counsel the presumption that he decided which issues were most likely to afford relief on appeal. Moreover, the Sixth Amendment does not require that appellate counsel raise every nonfrivolous issue on appeal. In fact, the [United States] Supreme Court has recognized the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.

Lucas v. McBride, 505 F. Supp. 2d 329, 351 (N.D.W. Va. 2007) (upholding affirming the West Virginia Supreme Court of Appeals findings regarding relief in habeas) (citations omitted).

Regarding Petitioner's contention that *Appellate Counsel* was deficient for not raising the issue of ineffective assistance of *Trial Counsel* on direct appeal, the Supreme Court of Appeals has been clear that

> [t]he very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal. To the extent that a defendant relies on strategic and judgment calls of his or her trial counsel to prove an ineffective assistance claim, the defendant is at a decided disadvantage. Lacking an adequate record, an appellate court simply is unable to determine the egregiousness of many of the claimed deficiencies.

State v. Miller, 194 W. Va. 3, 15, 459 S.E.2d 114, 126 (1995); *See also generally* fn. 1,

State ex rel. Daniel v. Legursky, 195 W. Va. 314, 318, 465 S.E.2d 416, 420 (1995)

(giving an in depth explanation why it is inappropriate to raise ineffective assistance of counsel claims on direct appeal).

Based upon the foregoing, the Court **FINDS** and **CONCLUDES** that Petitioner's contentions regarding the ineffectiveness of *Appellate Counsel* are without merit as *Appellate*

-40-

*Counsel's* failure to raise either issue on direct appeal was not deficient under the first prong of *Strickland/Miller*.

### B. Ineffective assistance of trial counsel

Petitioner asserts ineffective assistance of trial counsel as one of his grounds for relief. Because of Petitioner's vague/wide net approach, the Court has thoroughly reviewed the *Pro Se Petition, Amended Petition*, and the *Losh List* to ensure that all of Petitioner's contentions are acknowledged. Specifically, the Petitioner has made the following allegations regarding his *Trial Counsel's* performance:

**1)** *Trial Counsel* failed to obtain an arson expert;

**2)** *Trial Counsel* did not correct the event timeline;

**3)** *Trial Counsel* did not get a relevant time card;

**4)** *Trial Counsel* did not impeach witnesses;

**5)** *Trial Counsel* did not object to unsubstantiated claims or leading by the prosecution;

**6)** *Trial Counsel* released witnesses before allowing them all to testify;

**7)** *Trial Counsel* did not read Petitioner's case history;

**8)** *Trial Counsel* failed to conduct an investigation;

**9)** *Trial Counsel* did not visit with Petitioner until April 19, 2011, when trial was set for April 26, 2011;

**10)** *Trial Counsel* failed to get information on Mr. Burrow;

**11)** *Trial Counsel* ignored Petitioner's request for co-counsel;

**12)** *Trial Counsel* did not expose relationships between the police and fire department personnel;

**13)** *Trial Counsel* did not present any evidence regarding others who would have a motive to set the fire;

-41-

**14)** *Trial Counsel* did not argue for a lesser included offense; and

**15)** *Trial Counsel* failed to subpoena witnesses.

Some of Petitioner's allegations, although stated in different terms, are intrinsically related to a central issue of contention. For ease of analysis, this Court has combined contentions 2, 3, and 10, under a singular contention regarding *Trial Counsel's* alleged failure to correct or rebut discrepancies in testimony pertaining to the timeline of occurrences surrounding the fire. The Court has also combined contentions 6 and 15 as it is clear to this Court that, based upon the evidence adduced at the omnibus evidentiary hearings, both contentions relate to the testimony of two particular witnesses that were in fact present and testified at Petitioner's trial. *See* Sect. VI. *infra*, p. 66.

1.  **Contentions under petitioner's ineffective assistance of counsel claim that are without merit because they are inadequately supported by the record and the petitioner has provided no additional proof in support thereof**

Petitioner contends that his *Trial Counsel* was ineffective because *Trial Counsel* allegedly failed to: impeach witnesses, object to unsubstantiated claims or leading by the prosecution, read Petitioner's case history, conduct an investigation, act on Petitioner's request for the appointment of co-counsel, expose relationships between police department personnel and fire department personnel, and present any evidence regarding others who would have had a motive to set the fire.

As noted by the West Virginia Supreme Court of Appeals , "[a] charge of ineffective assistance of counsel is not one to be made lightly. It is a serious charge which calls into question the integrity, ability and competence of a member of the bar." State ex rel. Daniel v. Legursky, 195 W. Va. 314, 319, 465 S.E.2d 416, 421 (1995). "Unless claims of ineffective assistance of

counsel have substantial merit, [the] Court, historically, has taken a negative view toward the assertion of frivolous claims." Id.

The Petitioner failed to develop any of these allegations through the presentation of testimony or evidence at either of the omnibus evidentiary hearings. Further, the Petitioner did not cite any examples regarding these allegations, nor did Petitioner offer any explanation of how the alleged conduct operated to violate his constitutional rights.

Moreover, after a thorough review of the record, the Court **FINDS** that the record alone is insufficient to prove, by a preponderance of the evidence, that *Trial Counsel's* performance was deficient, that Petitioner was prejudiced by any of these alleged actions or inactions, or that *Trial Counsel* was in any manner ineffective, with regard to these seven alleged errors.

Based upon the foregoing, the Court **FINDS** and **CONCLUDES** that Petitioner's contentions regarding *Trial Counsel's* alleged failure to: impeach witnesses, object to unsubstantiated claims or leading by the prosecution, read Petitioner's case history, conduct an investigation, act on Petitioner's request for the appointment of co-counsel, expose relationships between police department personnel and fire department personnel, and present any evidence regarding others who would have had a motive to set the fire, are without merit and Petitioner is entitled to no relief in this habeas as he has failed to establish either prong of the *Strickland/Miller* test.

### 2. Trial Counsel's alleged failure to correct or rebut discrepancies in testimony pertaining to the timeline of occurrences surrounding the fire

Petitioner alleges that *Trial Counsel* failed to correct or rebut discrepancies in witness's testimony regarding various relevant times surrounding the events leading up to, and following, the fire.

-43-

The record reflects that witness's testimony varied considerably regarding the approximate time of the fire occurrence. *See* Trial Transcript, Volume I, pp. 80-82, 90, 105, 109, 111-113, 120, 129, 148-152, 164, 246-247, 249. The record also reflects that witness's testimony varied considerably regarding the distance Petitioner was from the scene of the fire when witnesses observed him, and the approximate time that Petitioner was observed. *See id.* at 121-122, 129-130,139-141, 164; *See also* Trial Transcript, Volume II, p. 19.

Contrary to Petitioner's assertion, *Trial Counsel* did explore many of these discrepancies during cross examination and direct examination. *See* Trial Transcript, Volume I, pp. 113, 134-135, 143-145; *See also* Trial Transcript Volume II, pp. 16, 19. Further, *Trial Counsel* attempted to develop and create doubt in the minds of the jurors as to the veracity of the State witnesses' testimony and as to whether the State had proven its case beyond a reasonable doubt by directing particular emphasis to these discrepancies during *Trial Counsel's* closing argument. *See* Trial Transcript, Volume II, pp. 73-79, 82-84.

The Petitioner would have this Court believe that if *Trial Counsel* had more thoroughly established an accurate timeline, it would have ultimately resulted in his acquittal. The Petitioner's emphasis is, however, misplaced. "The method and scope of cross-examination 'is a paradigm of the type of tactical decision that [ordinarily] cannot be challenged as evidence of ineffective assistance of counsel.' " Coleman v. Painter, 215 W. Va. 592, 596, 600 S.E.2d 304, 308 (2004) (citing State ex rel. Daniel v. Legursky, 195 W.Va. 314, 328, 465 S.E.2d 416, 430 (1995)). The burden was upon the State to establish the Petitioner's guilt beyond a reasonable doubt. Had *Trial Counsel* delved further into these discrepancies and attempted to develop these discrepancies even further than he did, it may very well have worked in direct contradiction to

-44-

his tactical endeavor to foster reasonable doubt. In essence, *Trial Counsel* may have inadvertently cleared the already muddy water. "There is much wisdom for trial lawyers in the adage about leaving well enough alone." State v. Miller, 194 W. Va. 3, 16, 459 S.E.2d 114, 127 (1995).

Moreover, a review of *Trial Counsel's* closing argument makes it very clear to this Court that *Trial Counsel's* strategy was to use these discrepancies to create and develop reasonable doubt in the minds of the jurors. "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." State v. Cooper, 172 W. Va. 266, 270, 304 S.E.2d 851, 854 (1983) (citing Syl. Pt. 21, State v. Thomas, 157 W.Va. 640, 203 S.E.2d 445 (1974)). This Court is unconvinced that no reasonably qualified defense attorney would have taken the same tactical approach as was taken by *Trial Counsel* during the defense of the Petitioner.

Based upon the foregoing, the Court **FINDS** and **CONCLUDES** that Petitioner's contention is unfounded and Petitioner has failed to establish that *Trial Counsel's* performance was deficient under the first prong of *Strickland/Miller*.

### 3. Trial Counsel's failure to subpoena witnesses and/or Trial Counsel's release of witnesses before they were allowed to testify

Petitioner contends that *Trial Counsel* failed to subpoena witnesses that the Petitioner wanted to appear and testify at his trial. Petitioner also contends that *Trial Counsel* released witnesses that the Petitioner wanted to testify at his trial before they were allowed to testify.

-45-

Following Petitioner's testimony at the *First Omnibus Hearing*, the Court discerned that Petitioner's contention relates specifically to the desired testimony of two witnesses: Mikayla Pritt and Lilly Sizemore.

Lilly Sizemore is the Petitioner's ex-wife. *See* Trial Transcript, Volume I, p. 85. Mikayla Pritt is the decedent's widow. *See* id. at 90; *See also* id. at 107-108. Both Lilly Sizemore and Makayla Pritt appeared at Petitioner's trial as witnesses for the prosecution. *See* Trial Transcript, Volume I, pp. 84, 100. Both witnesses testified at Petitioner's trial and were subject to cross examination by Petitioner's *Trial Counsel. See* id.

Factually, Petitioner's contentions concerning *Trial Counsel's* alleged failure to subpoena Lilly Sizemore and Mikayla Pritt, or the release of these two witnesses prior to them being permitted to testify, as molded, is wholly without factual merit and does not require further analysis.

Although Petitioner's testimony was convoluted at the *First Omnibus Hearing*, the Court was able to discern that the Petitioner actually alleges that he asked his *Trial Counsel* to recall Lilly Sizemore and Mikayla Pritt to testify, after those witnesses had testified, and been released during the prosecution's case in chief. The Petitioner asserts that after those witnesses were released, Petitioner desired the witnesses to be recalled to testify regarding the contents and conditions of the room where the West Virginia State Fire Marshall had determined that the fire had originated. The Petitioner further contends that had these witnesses been recalled, their testimony would have lent credence to his defense that the fire was accidental in nature and that the presentation of their testimony would have likely resulted in Petitioner's acquittal.

The Petitioner testified during direct testimony at the *First Omnibus Hearing* that after having a discussion with *Initial Counsel* concerning the fire marshall's investigation, Petitioner had informed *Initial Counsel* that he wanted the two subject witnesses called to testify in regard to the placement of furniture and the pre-fire condition of the room where the fire originated. Petitioner further testified that he made this request to all of the attorneys who had represented him. Then during cross examination at the *First Omnibus Hearing,* contrary to Petitioner's direct testimony, the Petitioner testified that he didn't notify *Trial Counsel* that he wanted the subject witnesses called to testify until after he heard the testimony of the fire marshall. The Petitioner further testified on cross-examination that he did not inform *Trial Counsel* of any questions that he wanted the subject witnesses asked, while those witnesses were on the stand and subject to cross-examination, but that after hearing the fire marshall's testimony, Petitioner had advised *Trial Counsel* that he wanted the subject witnesses recalled and specifically questioned about the contents and pre-fire condition of the room where the fire originated.

Moreover, the Petitioner chose to testify at his trial. *See* Trial Transcript, Volume II, pp. 11-35. During the colloquy immediately preceding Petitioner's testimony, Petitioner advised the Court that he was satisfied with the services provided by *Trial Counsel. See* Trial Transcript, Volume I, p. 263. At no point during this colloquy did the Petitioner advise the Court that his *Trial Counsel* had failed, or refused, to recall the subject witnesses to testify, or that he desired those witnesses to be recalled to testify. *See* id. at 260-265. Considering how readily Petitioner had previously complained to the Court when any of his prior counsel failed to take any action that he deemed necessary, this Court is of the opinion that it was highly unlikely that Petitioner would have had any qualms about bringing his concerns or desires to the attention of the Court.

-47-

The Court would also note that the two witnesses of which the Petitioner complains that *Trial Counsel* failed to recall after their release, is the same two witnesses Petitioner alleges were under the influence of alcohol or drugs and should not have been permitted to testify during his trial. *See* Sect. VII, Intoxicated Witnesses *infra*, pp. 66-70.

Based upon the foregoing, this Court seriously questions the veracity of Petitioner's testimony and finds Petitioner's assertions highly suspect.

Be that as it may, even if this Court takes Petitioner's contention at face value, the Petitioner's contention still fails under a *Strickland/Miller* analysis.

*Trial Counsel* fully explored and developed the exact issues that Petitioner asserts were not developed as a result of the subject witnesses not being recalled to testify. During the cross examination of the State Fire Marshall, Paul Gill, *Trial Counsel* brought out the placement of furniture in the room where the fire originated, the overall contents and condition of the room, and other possible causes of the fire. *See* Trial Transcript, Volume I, pp. 219-227. *Trial Counsel* then examined Detective Rod Perdue, II, regarding a statement that was taken from one of the subject witnesses, Lilly Sizemore, shortly after the fire occurred, wherein Ms. Sizemore gave a detailed account of the contents of the room and the condition of the floor. *See* Trial Transcript, Volume II, pp. 5-7, 9-10.

> The West Virginia Supreme Court of Appeals in *State v. Miller* acknowledged that
>
> [w]hat defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess. Obviously, lawyers always can disagree as to what defense is worthy of pursuing such is the stuff out of which trials are made.

State v. Miller, 194 W. Va. 3, 16, 459 S.E.2d 114, 127 (1995) (citing Solomon v. Kemp, 735 F.2d 395, 404 (11th Cir.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 952

-48-

(1985)); *See also* <u>State ex rel. Kitchen v. Painter</u>, 226 W. Va. 278, 290, 700 S.E.2d 489, 501 (2010) (citing <u>Goodson v. United States</u>, 564 F.2d 1071, 1072 (1977) for the proposition that counsel's decision not to interview or call witnesses is a tactical decision). "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." <u>State v. Cooper</u>, 172 W. Va. 266, 270, 304 S.E.2d 851, 854 (1983) (citing Syl. Pt. 21, <u>State v. Thomas</u>, 157 W.Va. 640, 203 S.E.2d 445 (1974).

Clearly it was a strategic maneuver for *Trial Counsel* to avoid putting potentially hostile witnesses back on the stand, and yet, still successfully elicit the same basic evidence through the use of a transcribed statement via the testimony of the interviewing detective and the thorough cross examination of the fire marshall. The Court cannot fault *Trial Counsel* for the method that he chose to bolster the defense's theory of accidental occurrence, nor can the Court find that a reasonably proficient trial attorney would never approach the presentation of rebuttal evidence in the same manner that *Trial Counsel* did in regards to the testimony of potentially hostile witnesses. *Trial Counsel* effectively put forth the same beneficial evidence as would have been offered by the subject witnesses, without having to face the possible adverse consequences associated with the direct examination of a potentially hostile witness.

Under these facts and circumstances, this Court **FINDS** and **CONCLUDES** that Petitioner's contention regarding *Trial Counsel's* alleged failure to recall Lilly Sizemore and Mikayla Pritt to testify after their release, is without merit as the Petitioner has failed to establish that *Trial Counsel's* performance was deficient under an objective standard of reasonableness.

## 4. Trial counsel did not argue for a lesser included offense

Petitioner alleges that *Trial Counsel* was ineffective because *Trial Counsel* did not argue for the inclusion of a lesser included offense instruction to the charge of felony murder during the commission of arson.

"The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense." Syl. Pt. 9, State v. Davis, 205 W. Va. 569, 573, 519 S.E.2d 852, 856 (1999) (citing Syl. Pt. 1, State v. Jones, 174 W.Va. 700, 329 S.E.2d 65 (1985)).

The West Virginia Supreme Court of Appeals case of *State v. Wade* makes it unnecessary for this Court to analyze the first prong of this inquiry. State v. Wade, 200 W. Va. 637, 490 S.E.2d 724 (1997). The *Wade* Court held that, "[a]s a matter of law, second-degree murder, voluntary manslaughter, and involuntary manslaughter are not lesser included offenses of felony-murder." Syl. Pt. 4, id. at 640, 490 S.E.2d at 727.

Moreover, a factual inquiry into Petitioner's case also reveals that a lesser included offense instruction would not have been warranted. The prosecution sought to prove, by the evidence presented, that the Petitioner intentionally set fire to his mobile home which ultimately resulted in the death of Kenneth Pritt. The Petitioner's defense was in essence three-fold: 1) Petitioner was in no way involved with the fire's ignition, 2) the fire was possibly accidental in nature, and 3) if the fire was intentionally set, it was set by someone other than the Petitioner.

The Petitioner's defense essentially attacked the causation of the fire and Petitioner's involvement. If the jury chose to belief that the fire was not intentionally set by the Petitioner, the result would have been acquittal; the jury could not have found the Petitioner guilty of any lesser offense than that of commission of arson which resulted in the death of Kenneth Pritt. The evidence presented at Petitioner's trial, quite simply, required an all or nothing result.

*Trial Counsel* asserted, during his testimony at the *First Omnibus Hearing*, that an instruction on a lesser included offense was not warranted in Petitioner's case. Based upon the foregoing, this Court agrees.

The Court **FINDS** and **CONCLUDES** that Petitioner's contention that *Trial Counsel* provided ineffective assistance when he did not argue for a lesser included offense instruction, is without merit as *Trial Counsel's* performance was not deficient under the first prong of *Strickland/Miller*.

### 5. Trial counsel did not visit with petitioner until April 19, 2011, when trial was set for April 26, 2011

Petitioner asserts that *Trial Counsel* provided ineffective assistance because he allegedly did not visit with the Petitioner until April 19, 2011, when Petitioner's trial was scheduled to begin on April 26, 2011. The crux of Petitioner's argument is that *Trial Counsel* allegedly devoted an insufficient amount of time in preparation for Petitioner's trial and, as a result, Petitioner was provided ineffective assistance of counsel at his trial.

Although pertaining to whether the time given by a court was sufficient to permit counsel to effectively represent a client at trial, dicta contained in the West Virginia Supreme Court of Appeals case of *State v. Bush* offers some guidance as to the expected conduct of appointed counsel:

-51-

Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial.

State v. Bush, 163 W. Va. 168, 175, 255 S.E.2d 539, 543 (1979). "Timely appointment and a reasonable opportunity for adequate preparation are thus absolute prerequisites for fulfillment of counsel's constitutionally assigned role of seeing to it that available defenses are raised and the prosecution is put to its proof." Id. at 176, 255 S.E.2d at 543.

Along this same vein, *Strickland* places heavy emphasis upon the ultimate fairness of a defendant's trial:

From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

These basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable.

Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984) (citations omitted). "[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." Id. at 689, 104 S. Ct. at 2065.

Reading *Strickland* in conjunction with *Bush*, it is obvious that there is no hard and fast rule concerning how much time is objectively reasonable for counsel to spend preparing for a client's trial; Counsel must, at a minimum, spend that amount of time that is individually necessary for counsel to be adequately prepared to put the prosecution's case to the adversarial test. The time needed to adequately prepare will vary considerably based upon such factors as trial counsel's experience, the complexity of the case, the amount of work completed by any former counsel, and a whole host of other strategic, tactical, or reasonable considerations.

At the *First Omnibus Hearing*, the Petitioner presented testimony that *Trial Counsel* did not meet with the Petitioner until the week before Petitioner's trial. Petitioner further testified that from the time of *Trial Counsel's* appointment up to the day Petitioner's trial commenced, *Trial Counsel* only met with him on three occasions. The only testimony offered by the Petitioner concerning how *Trial Counsel's* alleged deficient communication acted to prejudice the Petitioner was that Petitioner felt *Trial Counsel* was unprepared. Petitioner offered no additional testimony or evidence, beyond this vague assertion, to show any specific incidents where *Trial Counsel's* performance fell below the mark because *Trial Counsel* allegedly only met with the Petitioner the week before the trial.

The Court would note at this point, that *Trial Counsel* was Petitioner's third appointed counsel and that *Trial Counsel's* appointment was made a little more than a year after Petitioner's indictment and roughly a year and a half after the date the offense was committed. *Trial Counsel* was appointed roughly three months prior to Petitioner's trial. Substantial progress had been made by the two appointed counsel that had preceded *Trial Counsel* in the representation of the Petitioner.

-53-

At the *First Omnibus Hearing*, *Trial Counsel* testified that at the time of his appointment, Petitioner's case was essentially in a posture to proceed to trial, that *Trial Counsel* was prepared to go to trial, and that *Trial Counsel* did not feel that he needed additional time to prepare. *Trial Counsel* further testified that had he felt he needed additional time to prepare, he would have filed a motion to continue Petitioner's trial. *Trial Counsel* testified that although he couldn't recall exactly how many times he had met with the Petitioner prior to trial, he could recall that he spent considerable time in preparation for the trial and that the number of times he travelled to the regional jail and met with the Petitioner would be reflected in the record on the voucher he submitted to the Court for payment.

Petitioner's contention is clearly refuted by the record as well.

The *Public Defender Services Defense Counsel Voucher Information* document (referred to hereinafter as the "*voucher*") reflects that *Trial Counsel* travelled and met with the Petitioner on February 3, 2011, April 19, 2011, April 21, 2011, April 22, 2011, April 23, 2011, and April 25, 2011, for a total of six (6) meetings prior to trial, not three (3) as asserted by the Petitioner during his testimony. *Trial Counsel* also met with the Petitioner for approximately thirty (30) minutes immediately preceding Petitioner's trial. The *voucher* reflects that *Trial Counsel* spent a combined total time of ten (10) hours and thirty (30) minutes in meetings with the Petitioner. *See* State ex rel. Quinones v. Rubenstein, 218 W. Va. 388, 395, 624 S.E.2d 825, 832 (2005) per curiam (rejecting a habeas petitioner's contention that counsel was ineffective for only meeting with him for a total of 5.1 hours prior to trial). The *voucher* also reflects that *Trial Counsel*, as the third counsel on Petitioner's case, spent a minimum of forty-nine (49) hours and thirty (30) minutes, prior to trial, investigating and working on the preparation of Petitioner's case.

The Court has also thoroughly reviewed the trial transcripts in this matter and finds that *Trial Counsel* did not exhibit signs of being unprepared or uninformed as to the facts of Petitioner's case. Further, this Court is unable to find that *Trial Counsel's* work and preparation on Petitioner's case was deficient or that *Trial Counsel's* level of preparedness in any way negatively affected the fairness of Petitioner's trial.

Based upon the foregoing, this Court **FINDS** and **CONCLUDES** that Petitioner's claim, as put forth, is unfounded and frivolous. As it relates to the *actual* performance of *Trial Counsel*, the Court further **FINDS** and **CONCLUDES** that *Trial Counsel's* performance was not deficient under the objective reasonableness standard of *Strickland/Miller*.

### 6. Trial counsel failed to obtain an arson expert

Petitioner contends that *Trial Counsel* provided ineffective assistance when he did not obtain an arson expert to rebut the West Virginia State Fire Marshall's testimony concerning the fire.

There was conflicting testimony at the *First Omnibus Hearing* concerning whether the Petitioner asked *Trial Counsel* to elicit the services and testimony of an arson expert. Petitioner testified that he told each of his appointed counsel that he wished to obtain the services of an arson expert, while *Trial Counsel* testified that Petitioner never asked him to obtain the services of an arson expert. Moreover, *Trial Counsel* testified that it was unknown to him whether Petitioner had asked prior counsel about an arson expert, but, after his appointment, an independent review of the prosecution's evidence caused him to determine that an arson expert would not be beneficial and that eliciting the services of an arson expert to testify in Petitioner's trial was unnecessary.

Petitioner testified that an arson investigator would have been helpful to show that holes in the area where the fire marshall had determined the fire most likely originated, were caused by rot, not by fire, and that an expert could have offered testimony regarding the pre-fire condition of the room where the fire originated. In essence Petitioner asserts that the presentation of his theory of the case was significantly hampered when *Trial Counsel* did not utilize the services of an arson expert to rebut the fire marshall's testimony.

The trial transcripts reveal, however, that *Trial Counsel* effectively promulgated Petitioner's theory of the case through the fire marshall's own cross examination testimony, and other direct testimony. *See* Trial Transcript, Volume I, pp. 219-227; *See also* Trial Transcript, Volume II, pp. 5-7, 9-10. "The strong presumption that counsel's actions were the result of sound trial strategy ... can be rebutted only by clear record evidence that the strategy adopted by counsel was unreasonable." Coleman v. Painter, 215 W. Va. 592, 596, 600 S.E.2d 304, 308 (2004) (citing State v. LaRock, 196 W.Va. 294, 309, 470 S.E.2d 613, 628 (1996)).

Moreover, the Petitioner did not elicit the testimony of an arson expert to show how, if at all, an independent arson expert's testimony and conclusions would have differed from the testimony and conclusions of the West Virginia Fire Marshall. Beyond Petitioner's mere speculation and conjecture, the Petitioner provided no substantive evidence or explanation of how the testimony of an arson expert would have altered the outcome of Petitioner's trial. Petitioner's speculation and conjecture are not a sufficient substitute for concrete evidence. *See* Coleman v. Painter, 215 W. Va. 592, 597, 600 S.E.2d 304, 309 (2004) (finding guesswork and speculation not sufficient to support a claim that counsel failed to elicit the services of an expert witness).

Even assuming, arguendo, that an arson expert would have wholly refuted the fire marshall's testimony regarding the nature of the holes in the floor, or the pre-fire condition of the room where the fire originated, this Court remains unconvinced that this would have significantly negated the other evidence presented by the prosecution. Absent a showing that Petitioner suffered prejudice from *Trial Counsel* not eliciting expert testimony at Petitioner's trial, Petitioner is not entitled to relief in this habeas proceeding.

Based on the foregoing, the Court **FINDS** and **CONCLUDES** the following:

**1)** *Trial Counsel's* performance in putting forth Petitioner's theory of the case without the use of an arson expert was not deficient under an objective standard of reasonableness; and

**2)** Petitioner has failed to present sufficient substantive evidence to show that he in any way suffered prejudice as a result of *Trial Counsel* not eliciting the testimony of an independent arson expert; and

**3)** Petitioner has failed to show that but for *Trial Counsel* not eliciting the testimony of an independent arson expert, there is a reasonable probability that the Petitioner would have been acquitted of the charge of felony murder.

### B.1 Overall conclusion regarding petitioner's ineffective assistance of trial counsel claim

Based upon the foregoing analysis of each of Petitioner's contentions under his ineffective assistance of trial counsel claim, the Court **FINDS** and **CONCLUDES** that the manner in which *Trial Counsel* performed during his representation of the Petitioner was in no way ineffective under the standards outlined in *Strickland/Miller supra.*

## IV.   *Excessiveness Or Denial Of Bail*

Petitioner asserted in his *Losh List* that the excessiveness or denial of bail infringed on his state and federal constitutional rights.

The United States Constitution, Amendment VIII, and the West Virginia Constitution, Article III, Section 5, provide that "[e]xcessive bail shall not be required." West Virginia Code § 62-1C-1 provides, in relevant part, that

> [a] person arrested for an offense *not punishable by life imprisonment* shall be admitted to bail by the court or magistrate. A person arrested for an offense *punishable by life imprisonment* may, in the discretion of the court that will have jurisdiction to try the offense, be admitted to bail.

(*emphasis added*).

W. Va. Code § 61-2-1 provides, in relevant part, that "[m]urder . . . in the commission of, or attempt to commit[] arson[] . . . is murder of the first degree." West Virginia Code further provides that "[m]urder of the first degree shall be punished by confinement in the penitentiary for life." W. Va. Code § 61-2-2 (West).

In the case at bar, the Petitioner was charged with felony murder in the commission of arson; ergo, the Petitioner was charged with murder in the first degree. Based upon the nature of the crime of which he was charged, the Petitioner was held without bail pending trial. Under these circumstances, the decision to grant bail was not mandatory and was clearly within the discretion of the Court.

It is also important to note that the Petitioner did not assert the denial of bail at any stage of the underlying proceedings, on direct appeal, or in the Petitioner's *Pros Se Petition* or *Amended Petition*. The issue of denial of bail was for the first time raised as a randomly marked ground for relief in the Petitioner's *Losh List*.

-58-

Moreover, during his testimony at the *First Omnibus Hearing*, the Petitioner provided minimal evidence or explanation in support of this alleged constitutional error. The Petitioner did testify, however, that he never asked any of his attorneys to make a motion for bail because he was without the means to make bail anyway. This testimony is consistent with the information received by the Court at the time of Petitioner's arraignment. *See Arraignment Order* entered January 27, 2010 ("the Court was informed that bond was not an issue at this time and the defendant was remanded back into the custody of the Fayette County Sheriff's Department.")

Based upon the foregoing, this Court **FINDS** and **CONCLUDES** that Petitioner's bail contention is factually unfounded and without merit as the Petitioner's state and federal constitutional rights were not violated when he never raised the issue of bail and was subsequently held without bail pending his conviction for first degree murder.

## V.  *Defendant's Absence From Part Of The Proceedings*

The Petitioner contends that his state and federal constitutional rights were violated when the Court allegedly granted a continuance of the Petitioner's trial without the Petitioner present and without Petitioner's knowledge. In essence Petitioner's contention is intrinsically entwined with Petitioner's assertion that his speedy trial rights were violated when a continuance was granted without his consent.

Both the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article III, Section 14 of the West Virginia Constitution guarantee the right of an accused to be present at all critical stages in the criminal proceeding. *See generally* Syl. Pt. 1, State ex rel. Redman v. Hedrick, 185 W. Va. 709, 408 S.E.2d 659 (1991); Kentucky v. Stincer, 482 U.S. 730, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987).

-59-

The Supreme Court of Appeals has established that

> [i]f an accused demonstrates that his right to confront his accusers was abridged by the State or that he was absent during a critical stage of the trial proceeding, his conviction of a felony will be reversed where a possibility of prejudice appears from the abrogation of the constitutional or statutory right.

Syl. Pt. 2, State ex rel. Redman v. Hedrick, 185 W. Va. 709, 711, 408 S.E.2d 659, 661 (1991) (citing Syl. Pt. 8, State ex rel. Grob v. Blair, 158 W.Va. 647, 214 S.E.2d 330 (1975)). However, even if an accused is absent from a critical stage of the proceeding, it is not reversible error unless there was a possibility of prejudice to the defendant as a result of his absence. Syl. Pt. 3, Id. at 711, 408 S.E.2d at 661. A harmless error inquiry must be made to determine whether the accused's absence is reversible error; the Court must determine whether the absence occurred at a critical stage of the accused's proceeding, and if so, the Court must then determine whether the accused's absence constituted harmless error. State ex rel. Redman v. Hedrick, 185 W. Va. 709, 714, 408 S.E.2d 659, 664 (1991) (citing State v. Boyd, 160 W. Va. 234, 247, 233 S.E.2d 710, 719 (1977)).

Although expressed in different terms, the United States Supreme Court has utilized a similar inquiry. *See* Kentucky v. Stincer, 482 U.S. 730, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987); *See also* Snyder v. Com. of Mass., 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934). The critical stage inquiry relies on whether a defendant's "presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge." Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667, 96 L. Ed. 2d 631 (1987) (citing Snyder v. Massachusetts, 291 U.S. 97, 105-106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). A defendant's presence is not required "when presence would be useless, or the benefit but a shadow . . ., [but is required when] a fair and just hearing would be thwarted by his absence." Id. at 745, 107 S. Ct. at 2667

(citations omitted). Based upon comparable federal case law, once it is determined that the defendant's presence was required, a harmless error inquiry should then be conducted to determine whether the defendant was prejudiced by his absence. *See generally* <u>Rushen v. Spain</u>, 464 U.S. 114, 117-19, 104 S. Ct. 453, 455-56, 78 L. Ed. 2d 267 (1983) (disagreeing with lower Court's ruling that absence from a critical proceeding is never subject to harmless error analysis); <u>United States v. Schor</u>, 418 F.2d 26, 30 (2d Cir. 1969) (acknowledging that deprivation of the Rule 43 right of presence is subject to Rule 52 harmless error inquiry); n.21, <u>Kentucky v. Stincer</u>, 482 U.S. 730, 747, 107 S. Ct. 2658, 2668, 96 L. Ed. 2d 631 (1987) (addressing dissenting opinion's contention that the majority improperly shifted burden in harmless error analysis).

Although, the Petitioner's testimony on this issue was convoluted and haphazard, this Court was able to narrow Petitioner's contention down to three (3) possible instances: 1) a hearing the Court conducted on September 13, 2010, regarding the continuance of Petitioner's case from the May term of court to the September term of Court (*see* Procedural History *supra* ¶ 14, p. 6); 2) a hearing conducted on October 13, 2010, regarding Petitioner's *Motion For Continuance* (*see* Procedural History *supra* ¶ 18, p. 7); and 3) the entry of an *Agreed Continuance Order* entered by the Court on January 10, 2011, (*see* Procedural History *supra* ¶ 23, p. 9).

To ensure that Petitioner's contentions are thoroughly and fully addressed, the Court will address each of the three (3) possible instances alluded to during Petitioner's testimony.

### A. September 13, 2010, continuance hearing

The first instance alluded to by the Petitioner was a continuance hearing held on September 13, 2010. *See* Procedural History *supra*, ¶ 14, p. 6.The subject of this hearing was a requested continuance of Petitioner's case from the May term of Court to the September term of

-61-

Court. *See id.* As the Petitioner's state constitutional claim fails for other reasons, in the interest of brevity, the Court will assume, for purposes of its analysis, that the September 13, 2010, continuance hearing was a critical stage under West Virginia common law.

First, as reflected in the Court's *Continuance Order*, the ***Petitioner was present*** at the hearing held on September 13, 2010. *See Continuance Order* entered September 29, 2010.

Second, the record clearly shows that *Third Appointed Counsel* informed the Court that an *Agreed Continuance Order* had been requested but that the Petitioner ***would not agree*** to the continuance. *See id.* As this Court discussed and resolved *supra*, the Petitioner's constitutional right to a speedy trial was not at issue at that time. Moreover, the Court outlined in its order the reasons constituting good cause in support of the Court continuing Petitioner's trial into the next term of Court. *See id.*

Counsel had informed the Court that the Petitioner did not want to continue the matter. There was nothing additional that the Petitioner could have added that would have altered the Court in its determination of good cause for a continuance. His presence, for all intent and purpose, was unnecessary under the facts presented and his absence would have in no way affected the fairness of the outcome. Under these facts, even if the Petitioner had been absent from this proceeding, no prejudice would have befell the Petitioner as a result of his absence.

Based upon the foregoing, this Court **FINDS** and **CONCLUDES** that Petitioner's contention regarding his attendance at the September 13, 2010, hearing, is factually unsupported by the record and without merit. The Court further **FINDS** and **CONCLUDES** that even if the Petitioner had, in fact, been absent from the September 13, 2010, hearing, the Petitioner's

-62-

contention would still fail to establish that his state or federal constitutional rights were violated by his absence because he in no way would have suffered prejudice by his absence.

### B. October 13, 2010, continuance hearing

The second instance alluded to by the Petitioner was a hearing conducted on October 13, 2010. *See* Procedural History *supra*, ¶ 18, p. 7. This hearing served a dual purpose: 1) to address and rule on Petitioner's *Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof* and 2) to rule on Petitioner's *Motion For Continuance. See Order Granting Defendant's Motion For Continuance And Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof* entered November 29, 2010. As the Petitioner's state constitutional claim fails for other reasons, in the interest of brevity, the Court will assume, for purposes of its analysis, that the October 13, 2010, continuance hearing was a critical stage under West Virginia common law.

Once again, as reflected in the Court's order, the ***Petitioner was present*** in person and by *Third Appointed Counsel* at the October 13, 2010, hearing. *See Order Granting Defendant's Motion For Continuance And Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof* entered November 29, 2010.

Next, the hearing held on October 13, 2010, was exclusively held for the purpose of addressing ***Petitioner's previously filed motions***. *See* Procedural History *supra*, ¶ 17, p. 7. This is relevant because even if the Petitioner had not been present at this hearing, it is clear that he suffered absolutely no prejudice since the Court granted both of Petitioner's motions. *See Order Granting Defendant's Motion For Continuance And Motion To Produce Minutes Of The Grand Jury And A Transcript Thereof* entered November 29, 2010. It is difficult to fathom how, even if the Petitioner had been absent from this hearing, he could argue that there was anything he could

-63-

have offered or added to the proceeding that would have benefitted him when the Court wholly granted the relief sought by the Petitioner's motions.

Based upon the foregoing, this Court **FINDS** and **CONCLUDES** that Petitioner's contention regarding his attendance at the October 13, 2010, hearing, is factually unsupported by the record and without merit. The Court further **FINDS** and **CONCLUDES** that even if the Petitioner had, in fact, been absent from the October 13, 2010, hearing, the Petitioner's contention would still fail to establish that his state or federal constitutional rights were violated by his absence because he in no way would have suffered prejudice by his absence since the Court granted both of Petitioner's motions.

### C. January 10, 2011, entry of an order continuing case

The final instance alluded to by the Petitioner is this Court's entry of an *Agreed Continuance Order* on January 10, 2011. *See Agreed Continuance Order* entered January 10, 2011; *See also* Procedural History *supra*, ¶ 23, p. 9. A thorough review of the record reveals that further inquiry beyond the facts is unnecessary to analyze Petitioner's contention regarding this date.

Petitioner filed several motions from September 1, 2010, up to January 10, 2011, including two motions to remove *Third Appointed Counsel*, a motion to continue Petitioner's October 18, 2010, jury trial, a motion to produce a transcript of the Grand Jury minutes, and a motion to recuse the presiding judge, the Honorable Judge John W. Hatcher, Jr. *See* Procedural History *supra*, ¶¶ 12, 17, 20, 22, pp. 5-9. The Honorable Judge John W. Hatcher, Jr., had already entered an order that continued Petitioner's trial from the September term of Court to the January term of Court pursuant to Petitioner's *Motion For Continuance* filed on October 12, 2010. *See Order Granting Defendant's Motion For Continuance And Motion To Produce Minutes Of The*

-64-

*Grand Jury And A Transcript Thereof* entered November 29, 2010. By his recusal *Order* entered on December 10, 2010, the Honorable Judge John W. Hatcher, Jr., informed the Petitioner that Petitioner's January 25, 2011, trial date may have to be rescheduled to accommodate this Court's docket. *See Order* entered December 10, 2010.

In actuality the *Agreed Continuance Order* entered by this Court on January 10, 2011, did not continue Petitioner's trial from the September 2010 term of Court to the January 2011 term of Court, nor did it continue the Petitioner's January 25, 2011, trial date; in effect, it served only to confirm that the matter was continued to the January 2011 term of Court by the recused Judge's prior order and set the matter for a status conference to be held on January 19, 2011. *See Agreed Continuance Order* entered January 10, 2011. Further, Petitioner's January 25, 2011, trial date was not continued until this Court conducted a hearing on January 19, 2011, to address the status of Petitioner's case and Petitioner's January 6, 2011, *Motion to remove counsel, and appoint substitute counsel*, at which hearing the Petitioner was personally present. *See Status Conference Order* entered April 26, 2011; *See also Order* entered January 21, 2011.

Because it was just prior to the beginning of the January term of Court when Petitioner's case was transferred to this Court, and in an attempt to address the many issues presented during the pendency of Petitioner's case, the Court inadvertently entered a redundant order addressing an issue which had already been addressed by the recused Court. As such, the entry of the January 10, 2011, *Agreed Continuance Order* would not constitute a critical stage of Petitioner's proceeding, served nothing more than an administrative function, and in no way served to prejudice the Petitioner.

Based upon the foregoing, this Court **FINDS** and **CONCLUDES** that the Petitioner's absence at the time of this Court's entry of the *Agreed Continuance Order* on January 10, 2011, in no way violated the Petitioner's state and federal constitutional rights because the entry of the order served an administrative function only and in no way altered the term of court trial was to be held, or the January 25, 2011, trial date that was established by the recused Court's ruling on Petitioner's October 12, 2010, *Motion For Continuance*.

## VI.    *Refusal To Subpoena Witnesses*

Petitioner raised the issue of "refusal to subpoena witnesses" in his *Losh List*. The Court notes at this point that evidence adduced at the *First Omnibus Hearing* substantially clarified Petitioner's assertion. The Petitioner does not allege that the Court or any other administrative court official refused to subpoena any witness after an appropriate request was made; the Petitioner asserts instead that *Trial Counsel* failed to recall the subject witnesses during Petitioner's trial. The two witnesses Petitioner alleges that subpoenas were not issued for were in fact two witnesses that were subpoenaed to testify on behalf of the prosecution, and did, in fact, testify at Petitioner's trial.  Based upon this factual clarification, the Court will address this contention under Petitioner's ineffective assistance of trial counsel claim, rather than as an independent ground for relief. *See* discussion *supra*, pp. 45-49.

## VII.    *Incompetent And Intoxicated Witnesses Testifying With Knowledge Of The Prosecution*

The Petitioner alleges that the Prosecution knowingly permitted two of its key witnesses to testify while under the influence of alcohol and drugs, and that by doing so, his state and federal constitutional rights were violated.

-66-

Rule 601 of the West Virginia Rules of Evidence and the Federal Rules of Evidence both provide that "[e]very person is competent to be a witness" unless otherwise excluded by the rules. Drawing on Fourth Circuit Court of Appeals precedence, the Supreme Court of Appeals in *State v. Merrit* noted that

> [t]he only grounds for disqualifying a party as a witness are that the witness does not have knowledge of the matters about which he is to testify, that he does not have the capacity to recall, or that he does not understand the duty to testify truthfully.

183 W. Va. 601, 608, 396 S.E.2d 871, 878 (1990) (quoting F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 2.2(B) (2d ed.1986) (citing United States v. Odom, 736 F.2d 104 (4th Cir.1984)).

Both state and federal case precedent establish that the fact of consumption or intoxication does not in and of itself make an otherwise competent witness incompetent. *See* State v. Porter, 182 W. Va. 776, 783, 392 S.E.2d 216, 223 (1990) (acknowledging that a witness who is so intoxicated that he doesn't know what he is testifying to should be excluded) (citing 81 Am.Jur.2d Witness § 544, at 545 (1976)); *See also* U.S. v. Van Meerbeke, 548 F.2d 415 (2d Cir. 1976), cert. denied, 430 U.S. 974, 97 S. Ct. 1663, 52 L. Ed. 2d 368 (1977) (witness who digested opium on witness stand remained a competent witness); U.S. v. Banks, 520 F.2d 627 (7th Cir. 1975) (witness on methadone maintenance program is competent).

In the case at bar, the Petitioner often contradicted himself on this subject during his testimony at the *First Omnibus Hearing*. The Petitioner initially testified that he didn't recognize the subject witnesses exhibiting any signs of being under the influence and that he had only discovered it after the conclusion of the trial. Contrary to this testimony, Petitioner later testified that he thought one of the witnesses exhibited signs of intoxication during the trial proceedings.

This Court finds it particularly noteworthy that the subject witness Petitioner alleges exhibited signs of intoxication, is, in fact, the Petitioner's ex-wife. Further, the two subject witnesses alleged to have been under the influence are the same two witnesses the Petitioner asserts that *Trial Counsel* failed to subpoena or recall to testify. *See* discussion *supra*, Sect. VI., p. 66; *See also* discussion *supra*, pp. 45-49.

Additionally, Petitioner's witness, Nola Duncan, testified that she smelled the odor of alcohol on the subject witnesses and seen them drinking in the parking lot of the courthouse during a time when the Court was in recess, but she could not recall whether it was before or after the subject witnesses had testified. Ms. Duncan further testified that she notified the prosecutor's secretary, Ms. Cathy Canterbury, about her observations.

The Court again finds it particularly noteworthy that Ms. Nola Duncan's testimony related primarily to the other subject witness, who is, in-fact, Ms. Nola Duncan's former daughter-in-law and the mother of Ms. Duncan's estranged grandchildren.

Neither the Petitioner, nor Petitioner's witness, prior to this habeas proceeding, notified the prosecutor, Petitioner's *Trial Counsel*, law enforcement officers that were present, or the Court regarding their alleged observations. Even more relevant is the fact that the presiding Judge did not observe the subject witnesses exhibit any signs which would call their competency to testify into question.

Moreover, the prosecuting attorney's secretary, Ms. Cathy Canterbury, testified that she was in direct contact with the witnesses on the day in question and did not note the subject witnesses exhibiting any signs of being under the influence of alcohol or drugs. Ms. Canterbury also testified that she had never been notified by Ms. Nola Duncan about the subject witnesses

-68-

smelling like alcohol, or appearing to be under the influence, and that had she been so notified, she would have immediately informed the prosecutor.

Also, a thorough review of the trial transcript does not reveal the subject witnesses' testimony to evince the influence of alcohol or drugs. Quite simply, this Court is left with the testimony of the Petitioner and Petitioner's witness, Ms. Nola Duncan, who appear to be the only people who observed the subject witnesses to have exhibited signs of being under the influence of alcohol or drugs.

The Petitioner has simply not provided this Court with any credible evidence to show that 1) the subject witnesses were in fact intoxicated or under the influence of alcohol or drugs; 2) if the subject witnesses were in fact intoxicated, that the prosecutor was aware of their condition; or 3) if the subject witnesses were in fact intoxicated, they were so intoxicated that their ability to accurately recall events surrounding the fire was so impaired as to legitimately call their competency to testify into question.

Having weighed the credibility of the witnesses and evidence presented at the *First Omnibus Hearing* and the *Second Omnibus Hearing*, this Court **FINDS** that the Petitioner's contention is frivolous, factually unsupported, and wholly without merit.

Even if this Court assumes, arguendo, that the subject witnesses had consumed alcohol or drugs prior to presenting their testimony, that issue would clearly go more to the weight those witnesses' testimony may have been given by the jury rather than the competency of the witnesses to testify. *See generally* State v. Porter, 182 W. Va. 776, 783-84, 392 S.E.2d 216, 223-24 (1990) (citing State v. Hall, 464 So.2d 966 (La.Ct.App.1985)); *See also generally* U.S. v. Harris, C.A.7 (Ind.) 1976, 542 F.2d 1283, cert. denied 97 S.Ct. 1558, 430 U.S. 934, 51 L.Ed.2d

779. "[E]valuating the credibility of witnesses is not the role of the judge; such evaluations are the province of the jury." State v. Carrico, 189 W. Va. 40, 46-47, 427 S.E.2d 474, 480-81 (1993) (citing Syl. Pt. 4, State v. Burton, 163 W.Va. 40, 254 S.E.2d 129 (1979)).

The subject witnesses were before the jury, subject to direct and cross examination, and the jury was free to observe and assess the credibility of those witnesses. The jury was clearly in a position to determine what weight should be given to the testimony of the alleged "intoxicated" witnesses. This Court will not now disturb the jury's assessment based upon the Petitioner's and Ms. Duncan's bald assertions.

Based upon the foregoing, this Court **FINDS** and **CONCLUDES** that Petitioner's state and federal constitutional rights were not in any way violated as Petitioner's contention is wholly without merit and factually unsupported. This Court further **FINDS** and **CONCLUDES** that even if said contention was factually supported, it would, at best, constitute trial error that simply does not rise to a level that would even remotely implicate the Petitioner's state and federal constitutional trial rights.

## VIII. *Cumulative Effect Of Numerous Errors*

The Petitioner finally asserts that the numerous errors alleged to have been committed during Petitioner's trial, collectively operated to deny the Petitioner his state and federal constitutional rights.

The cumulative error doctrine may be applicable to proceedings where various errors combine to affect the overall validity of the judgment. *See generally* Tennant v. Marion Health Care Found., Inc., 194 W. Va. 97, 117-18, 459 S.E.2d 374, 394-95 (1995) (providing an overall assessment of the cumulative error doctrine). "Where the record of a criminal trial shows that the

-70-

cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." State v. Carrico, 189 W. Va. 40, 47, 427 S.E.2d 474, 481 (1993) (citing Syl. Pt. 5, State v. Walker, 188 W.Va. 661, 425 S.E.2d 616 (1992)); Syl. Pt. 5, State v. Smith, 156 W.Va. 385, 193 S.E.2d 550 (1972).

Even though the cumulative error doctrine is available for use by a circuit court in situations where numerous harmless errors have impacted the outcome of a case, the doctrine should, however, be used sparingly. *See* Tennant v. Marion Health Care Found., Inc., 194 W. Va. 97, 118, 459 S.E.2d 374, 395 (1995). The cumulative error doctrine is only applicable when the record reveals that there are at least *some* errors. *See* id., at 118, 459 S.E.2d at 395; *See also* State v. Knuckles, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996) per curiam. Further, where the errors are insignificant and inconsequential, reversal is not warranted. Id. (citing I Franklin D. Cleckley, Handbook on Evidence § 1-7(B)(5) at 49); State v. Clements, 175 W. Va. 463, 472, 334 S.E.2d 600, 610-11, cert. denied, 474 U.S. 857, 106 S.Ct. 165, 88 L.Ed.2d 137 (1985). "Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." State v. Knuckles, 196 W. Va. at 426, 473 S.E.2d at 141.

Based upon this Court's analysis of each of Petitioner's alleged errors, *supra*, this Court **FINDS** and **CONCLUDES** that the Petitioner has failed to establish that numerous errors occurred in his trial and as such Petitioner's cumulative error contention is without merit and unsupported by the record. Further, based upon a thorough review of the surrounding circumstances, the evidence supporting Petitioner's conviction, and the relevant law, this Court **FINDS** and **CONCLUDES** that those errors alleged by the Petitioner for which Petitioner has

managed to muster some support thereof, are at best, insignificant and inconsequential, and would simply not warrant a reversal of Petitioner's conviction.

## IX. ASSESSMENT OF FEES AND COSTS FOR THIS PROCEEDING PURSUANT TO W.VA. CODE § 53-4A-4(b)

The Petitioner proceeded in forma pauperis in the prosecution of this habeas matter.

Pursuant to West Virginia Code, a petitioner who alleges sufficient facts to show to the satisfaction of the Court that he or she is unable to pay the costs of the proceeding or to employ counsel, may be permitted to proceed in forma pauperis in the prosecution of a petition under W.Va. Code § 53-4A-1 for a writ of habeas corpus. W. Va. Code Ann. § 53-4A-4(a) (West). W.Va. Code § 53-4A-4(b) further provides that

> all necessary costs and expenses incident to [habeas] proceedings hereunder, originally, or on appeal pursuant to section nine of this article, or both, including, but not limited to, all court costs, and the cost of furnishing transcripts, shall, upon certification by the court to the state auditor, be paid out of the treasury of the State from the appropriation for criminal charges.

At the conclusion of the habeas matter, the Court shall grant that relief, if any, which is warranted under the circumstances and shall "adjudge the costs of the proceedings, including the charge for transporting the prisoner, to be paid as shall seem right." W. Va. Code Ann. § 53-4-7 (West). The West Virginia Code governing habeas corpus proceedings also provides that at the conclusion of the habeas matter, "[i]n the event a petitioner who is proceeding in forma pauperis *does not substantially prevail*, all such costs, expenses and fees shall be and constitute a judgment of the court against the petitioner to be recovered as any other judgment for costs." W. Va. Code Ann. § 53-4A-4(b) (West) (*emphasis added*).

The Court has carefully considered Petitioner's alleged grounds for relief and has given Petitioner the benefit of every reasonable doubt in considering those grounds. Yet the Court has

-72-

concluded overwhelmingly that the Petitioner is entitled to no relief because Petitioner's claims are unsupported by the evidence adduced at the omnibus evidentiary hearings and the record in this matter. The Court has found that Petitioner's contentions are without merit, and many are frivolous. Indeed, in many instances, the Court sincerely questions the veracity of Petitioner's allegations and testimony presented in support thereof. In any event, the Petitioner is not entitled to any of the relief sought in Petitioner's *Petition Under W.Va. Code § 53-4A-1 for a Writ of Habeas Corpus*.

Based upon the foregoing, the Court **FINDS** and **CONCLUDES** that Petitioner has failed to substantially prevail on any of his alleged claims for relief. The Court further **FINDS** and **CONCLUDES** that it is both appropriate and warranted for the Petitioner to be assessed all related costs, expenses and fees associated with the prosecution of this habeas proceeding in Fayette County Circuit Court civil case number 12-C-280.

## FINAL RULING AND JUDGMENT

**THEREFORE**, in consideration of all of the above, the Court is of the opinion to, and hereby does, **DENY** the relief sought by the Petitioner in his *Petition Under W.Va. Code §53-4A-1 for a Writ of Habeas Corpus* and **DISMISSES** this matter, with prejudice.

As the Petitioner did not substantially prevail in this matter, the Court further **ORDERS** that the Petitioner *shall be assessed all costs, expenses and fees* associated with the prosecution of this matter and that all such costs, expenses and fees "shall constitute a **JUDGMENT OF THE COURT** against the Petitioner to be recovered as any other judgment for costs." W.Va. Code § 53-4A-4(b) (**EMPHASIS ADDED**).

-73-

This seventy-four (74) page *Order Denying And Dismissing Petition* is a **FINAL ORDER**. The Clerk is directed to remove this matter from the Court's active docket.

The Clerk is further directed to send an attested copy of this *Order Denying And Dismissing Petition* to: **Christopher T. Pritt, Esq.**, 700 Washington Street East, Suite 204, Charleston, WV 25301; **Scott B. Burgess, Inmate #53277-1,** Mount Olive Correctional Complex, One Mountainside Way, Mount Olive, West Virginia 25185; **David Ballard, Warden**, Mount Olive Correctional Complex, One Mountainside Way, Mount Olive, West Virginia 25185; and **Brian D. Parsons, Assistant Prosecuting Attorney**, 108 East Maple Avenue, Fayetteville, West Virginia 25840

**ENTERED** this the 2nd day of July 2014.

**PAUL M. BLAKE, JR,
JUDGE**

_____
Judge Paul M. Blake, Jr.

A TRUE COPY of an order entered
July 02, 2014
Teste: Daniel E. Wright
Circuit Clerk Fayette County, WV

-74-